Strosser *v.* The City of Fort Wayne.

Filed March 11, 1885.

---

No. 11,565.

## STROSSER *v.* THE CITY OF FORT WAYNE.

MUNICIPAL CORPORATION.— *Annexation of Territory.— Estoppel of Land-Owner.*—A property-owner does not estop himself from contesting the validity of proceedings ordering the annexation of territory to the corporation in cases where there is no jurisdiction to make the order, by voting at municipal elections and by offering himself as a candidate for office; nor does he estop himself by unsuccessfully petitioning the common council to improve the streets.

SAME.—*Jurisdiction of Common Council in Annexation Proceedings.*—The common council of a city has no authority to order the annexation of contiguous territory unless it has been laid off into lots and platted, without the consent of the owners, and an order annexing territory not platted, and in cases where the owner has not consented, is void.

SAME.—*Estoppel of Property-Owner.—Improvements by City.*—If the property-owner for a considerable length of time acquiesces in the annexation proceedings, and, without objection, sees the city make improvements and expend large sums of money upon the faith of the validity of the proceedings, he will be estopped from impeaching the validity of the proceedings, although he may not have directly received any benefit from the improvements made by the city.

SAME.—*Corporate Boundary.—Ignorance of Facts.—Estoppel.*—Where public officers, having no personal interest in the matter, and acting in good faith, assume to make a change in the corporate boundaries of a city, and fail through mistake of fact to proceed in accordance with the statute, a property-owner who resides in the territory sought to be annexed, and who sees the city spend large sums of money in making public improvements on the territory annexed, may be estopped even though he did not know that the proceedings were void.

CURATIVE STATUTES.— *Validity and Effect.*—Curative statutes are valid, and may heal defects and irregularities in judicial proceedings; but, where the proceeding was had in a tribunal having no jurisdiction of the subject-matter, the proceeding is void, and can not be made valid by a curative statute.

SAME.—*Common Council.*—*Board of Commissioners.*—*Jurisdiction.*—Where the statute confers exclusive jurisdiction upon the board of commissioners to order lands annexed to a city, the power can not be exercised by the common council, and a statute attempting to legalize an order made in such a case by the common council is inoperative and void.

From the Allen Superior Court.

*N. Wyeth,* for appellant.

*H. Colerick,* for appellee.

ELLIOTT, J.—It is not necessary to set forth with much particularity the allegations of the complaint of the appellant, for no attack is made upon it in any form. The several paragraphs of the pleading are, in all essential particulars, substantially alike, and count upon the same cause of action, which, shortly stated, is this: The appellee attempted to annex the appellant's land and that of other persons; the proceedings were absolutely void, but, notwithstanding the fact that such proceedings were void, the municipal officers did levy and collect taxes from the appellee and now retains the money so collected, although the land was not subject to taxation.

The action is by a property owner who has paid the taxes which he seeks to recover, and is not an action by a purchaser at a tax sale, so that the case is fully within the rule laid down in *City of Indianapolis* v. *McAvoy,* 86 Ind. 587; *Durham* v. *Board, etc.,* 95 Ind. 182; *Board, etc.,* v. *Armstrong,* 91 Ind. 528.

The second paragraph of the appellee's answer expressly admits that the land of the appellant was annexed in the manner described in the complaint; that taxes were assessed and paid as charged, and then seeks to avoid the effect of these admissions by these averments: "That during said time and after the annexation proceedings and while plaintiff resided on said premises, he voted at every city election and solicited the votes from his neighbors and friends for himself as a candidate for common councilman, and petitioned the common council for improvements for the seventh ward of the

city of Fort Wayne." We are unable to find any principle upon which this answer can be sustained.

If, as the answer admits, the proceedings for the annexation were unauthorized, the city had no right to levy or collect taxes, and unless the appellant has done something which precludes him from asserting the invalidity of the proceedings, his property rights are not affected by them. The fact that he voted at a municipal election can not have the effect to preclude him from asserting that the annexation proceedings were invalid, for that fact did not deprive the city of any substantial right nor confer upon the appellant a privilege or franchise of such legal value as to preclude him from asserting the truth respecting the annexation proceedings. Nor was the privilege of standing as a candidate for a municipal office of such value to him as to compel him to silence regarding the illegality of the attempt to annex contiguous territory, and surely his candidacy can not be treated as a thing of value to the municipality. The fact that he united in a petition for an improvement does not coerce him into silence, for the bare fact that he signed a petition neither brought him a thing of legal value, nor took from the city a thing of appreciable worth. These facts may be some evidence of acquiescence, but they are much too slight to build a defence of estoppel upon, or to sustain any defence of a kindred nature. This conclusion is so plainly correct upon general principles that it is hardly necessary to cite authorities, but there are cases fully in point against the sufficiency of the answer. *Langworthy* v. *City of Dubuque,* 13 Iowa, 86 ; *Buell* v. *Ball,* 20 Iowa, 282. Much stronger than the case made by the answer is that of *Greencastle Tp., etc.,* v. *Black,* 5 Ind. 557, where the plaintiff was held not concluded although he voted for the tax he sought to have declared illegal.

The evidence shows that the common council of the city passed a resolution for the annexation of contiguous territory, but it also appears that the lots which the city attempted to annex were not platted, and that the appellant did not con-

sent to the annexation. Under our statute, as has been repeatedly decided, the common council can not annex contiguous territory unless it is laid off into lots and platted. Such, indeed, is the express provision of the statute. R. S. 1881, sections 3195, 3196, 3197. When the land is not laid off into lots, the city must secure an order of the board of commissioners for the annexation. The common council have no jurisdiction in such cases, and an order of a court, even of the highest rank, in a case where it has no jurisdiction, is ineffective for any purpose. *Taylor* v. *City of Fort Wayne*, 47 Ind. 274; *City of Peru* v. *Bearss*, 55 Ind. 576; *Town of Cicero* v. *Williamson*, 91 Ind. 541; *Windsor* v. *McVeigh*, 93 U. S. 274. It is so plain that the common council can not exercise jurisdiction in cases where it is expressly conferred upon the board of commissioners of the county that neither argument nor authority is needed. *City of Logansport* v. *LaRose*, 99 Ind. 117.

The evidence does not show that the appellant ever received any substantial benefit from the annexation, nor does it show that the city incurred any expense, or was induced to change its position to its injury, on account of the attempted annexation. If it had been shown that the appellant had received any benefit from the attempted annexation, or if it had been made to appear that the city had incurred expense, or laid out money, on the faith that the annexation was valid, we should have had a very different case. But we have here a case where the city did not change its position to its injury, nor the citizen receive any substantial consideration. The case falls within the general rule thus stated by one of the text-writers: " It will be found upon an examination of the above and other cases that, wherever the rights of other parties have intervened by reason of a man's conduct or acquiescence in a state of things about which he had an election, and his conduct or acquiescence, or even laches, was based on a knowledge of the facts, he will be deemed to have made an effectual

election; and he will not be permitted to disturb the state of things, whatever may have been his rights at first. But mere acquiescence or waiver, made without consideration, will not be binding, if a change of purpose do not affect the rights of others." Bigelow Est. (2d ed.) 508.

There may be a consideration sufficient to bind the person under a duty to act although he receives no direct benefit. A consideration may exist although the party against whom a right is urged may have received nothing of value from the other party. It is sufficient if there be loss or injury to the party acting. *Shade* v. *Creviston*, 93 Ind. 591, see p. 595. This principle is illustrated by the cases which hold that where a land-owner licenses another to do an act, and the licensee, upon the faith of the privilege granted, expends large sums of money, the licensor can not revoke the license. *Rogers* v. *Cox*, 96 Ind. 157, *vide* authorities p. 158; *Buchanan* v. *Logansport, etc., R. W. Co.*, 71 Ind. 265; *Miller* v. *State*, 39 Ind. 267; *Snowden* v. *Wilas*, 19 Ind. 10. It is further illustrated in cases of boundaries, for, in such cases, long acquiescence in a line accepted as the boundary will preclude the real owner of the soil from reclaiming it and changing the boundary, if the other party has made valuable improvements on the faith that the boundary was the true one. *McCormick* v. *Barnum*, 10 Wend. 104; *Chicago, etc., R. W. Co.* v. *People*, 91 Ill. 251; *Diehl* v. *Zanger*, 39 Mich. 601; *Hagey* v. *Detweiler*, 35 Pa. St. 409; *Columbet* v. *Pacheco*, 48 Cal. 395; *Meyers* v. *Johnson*, 15 Ind. 261; *Wingler* v. *Simpson*, 93 Ind. 201; *Pitcher* v. *Dove*, 99 Ind. 175. It is true that the mistake which caused the invalidity of the annexation proceedings was one of fact. *Grusenmeyer* v. *City of Logansport*, 76 Ind. 549; *City of Indianapolis* v. *McAvoy, supra; Town of Cicero* v. *Williamson, supra.* But an acquiescence in a mistake, and knowledge that large expenditures have been made in ignorance of the mistake, may preclude a party from relief against it. The general rule undeniably is that a party is not estopped unless he

has knowledge of all the material facts, but there are many exceptions to this general rule.  Pomeroy says: "The rule has sometimes been stated, as though it were universal, that an actual knowledge of the truth is always indispensable. It is, however, subject to so many restrictions and limitations, as to lose its character of universality.  It applies in its full force only in cases where the conduct creating the estoppel consists of silence or acquiescence.  It does not apply where the party, although ignorant or mistaken as to the real facts, was in such a position that he ought to have known them, so that knowledge will be imputed to him.  In such case, ignorance, or mistake will not prevent an estoppel.  Nor does the rule apply to a party who has not simply acquiesced, but who has actively interfered by acts or words, and whose affirmative conduct has thus misled another.  Finally, the rule does not apply, even in cases of mere acquiescence, when the ignorance of the real facts was occasioned by culpable negligence."  2 Pomeroy Eq. Juris., sec. 809.   We think that where the question is as to the corporate boundary, and where the authorities who attempt to extend the boundaries act in a public capacity, and in good faith assume to make the change in the corporate boundaries in accordance with the provisions of the law upon the subject, and fail in doing this by mistaking a fact, the corporation may successfully assert the efficacy of the change against a taxpayer who has lived in the territory sought to be annexed, who has for a considerable length of time acquiesced in the validity of such proceedings, and who has, without objection, seen large sums of money expended on the faith that such annexation proceedings were valid.

There are many reasons why a different rule should apply to the acts of municipal authorities engaged in the performance of purely public duties from the one which obtains in cases where the controversy arises out of matters of private business between individual citizens.   The municipal authorities in such a case exercise delegated governmental functions, for municipal corporations are instrumentalities of gov-

ernment. The officers of the corporation acting in public matters represent the inhabitants of the locality; for the inhabitants of the locality, and not the officers, constitute the corporation. *City of Valparaiso* v. *Gardner*, 97 Ind. 1. The acts of such officers are public, and one who is interested in the subject over which their acts extend is bound to take notice of such of their acts and proceedings as appear of record. *Johnson* v. *Common Council of Indianapolis*, 16 Ind. 227; *Newman* v. *Sylvester*, 42 Ind. 106; *City of Madison* v. *Smith*, 83 Ind. 502; *Swift* v. *City of Williamsburgh*, 24 Barb. 427. As the acts are public and are of record, a taxpayer is negligent if he acquiesces for a long period of time, without inquiry or objection, in the acts of the municipal officers. If one has means of knowledge and is put upon inquiry, he must exercise diligence; if he does not he will be deemed negligent. The inhabitants of the municipal corporation as it existed before the annexation, as well as those living in the territory which it was attempted to annex, are all interested in the annexation. Individual citizens may acquire rights in the highways, and while the municipal corporation in some measure represents these individual rights, still the citizens have rights distinct from those vested in the corporation. If a taxpayer were permitted to long acquiesce in the order of annexation and then secure its overthrow, great confusion would ensue and much injustice be often done. High considerations of public policy and of justice require that a taxpayer who is notified that a public corporation claims to have extended its limits so as to take in his property should act with promptness and proceed with diligence, if he would resist the attempted annexation. The difference between public officers, although acting for a public corporation, and private individuals acting for themselves in the promotion of their own private interests, is recognized in various forms. Public corporations as to purely public rights are not within the ordinary statute of limitation. 2 Dillon Mun. Cor. (3d

ed.), sec. 675.  A right to a public street can not, as against a public corporation, be acquired by possession. *Sims* v. *City of Frankfort,* 79 Ind. 446.

A municipal corporation, as the representative of the public, may acquire a direct estate in land by dedication, although there be no express grant by the owner, and the use may not have been long continued.  *Faust* v. *City of Huntington,* 91 Ind. 493; *Carr* v. *Kolb,* 99 Ind. 53.  The exercise of corporate authority over a territory under color of legal proceedings, with knowledge on the part of the public for twenty years, is held to be conclusive evidence of a charter.  *Worley* v. *Harris,* 82 Ind. 493; *Bow* v. *Allenstown,* 34 N. H. 351; *Bassett* v. *Porter,* 4 Cush. 487.  It would seem to follow from these principles that the exercise of authority for a much shorter period, with the knowledge of the public and the consent of the land-owner, ought, in a case where the corporation would otherwise suffer great loss, be held to conclude him from denying the legality of the annexation proceedings.  In the case of *Milne* v. *Mayor,* 7 La. (N. S.) 47, it was held that where the citizens of a locality are for a series of years regarded as corporators, and reap the benefits arising from the municipal ordinances and improvements, they will be treated as such and held to the liabilities of corporators.  In *People* v. *Farnham,* 35 Ill. 562, it is held that long acquiescence and acceptance of corporate benefits are sufficient to justify the courts in holding that the taxpayer is an inhabitant of the municipality. The case of *Hamilton* v. *McNeil,* 13 Grat. 389, declares and enforces the distinction between public corporations, and holds a doctrine similar to that declared in the preceding case.  The conclusion to which these authorities logically lead is, that acquiescence may constitute a citizen a corporator, and where it is long continued, and benefits of a substantial character are received by him as a corporator, the courts will treat him as such, and not permit him to withdraw the election evidenced by his acquiescence.  This result is in full harmony with the

fundamental maxim that he who derives the benefit must sustain the burden. Broom Legal Max. 705, side p. 706.

There are some other matters which it is important to consider on this branch of the case. The citizen of a territory which is assumed to be annexed to a municipal corporation is relieved from some burdens incident to a suburban residence. The burdens with respect to highways are essentially different, and from these he is relieved. He can not be subjected to both burdens, and in treating the annexation proceedings as valid, and receiving the benefits of a corporator, he makes his election, and where the municipality has expended money in the belief that the annexation was valid, he must be held to it. There can not be two public corporations exercising like powers within the same territory, though there may be two different governmental bodies, as a city and a county. This was said in *Taylor* v. *City of Fort Wayne, supra,* "to be a self evident proposition." Grant Corp. 18; *King* v. *Pasmore,* 3 T. R. 199, 243; 1 Dill. Mun. Corp. (3d ed.), sec. 184.

The common council of a city do not constitute the municipality, but they are the agents of the inhabitants so long as they act within the scope of the authority conferred upon them by the law. *City of Valparaiso* v. *Gardner, supra;* Grant Corp. 357. They are not the agents of persons living outside of the corporate limits, but when they assume to annex the lands owned by such persons, and afterwards assume to exercise corporate authority over the land and its owner, then they do assume to be his representative. It is a familiar elementary rule, that where one assumes to act as another's agent, and the person for whom he assumes to act receives and enjoys substantial benefit from the acts of the professed agent, he will be deemed to have ratified the agent's act, and will be bound to the same extent as if he had originally invested the agent with the authority assumed. We think this principle applies to a citizen who, with means of knowledge within his reach, acquiesces in the acts of the common council and receives substantial benefits from those acts,

although there was no precedent authority, but an assumption of authority under color of legal proceedings. This is strictly in consonance with the general doctrine of election. Bigelow says: "A party can not either in the course of litigation or in dealings *in pais* occupy inconsistent positions; and where one has an election between several inconsistent courses of action he will be confined to that which he first adopts. Any decisive act of the party done with knowledge of his rights and of the facts determines his election and works an estoppel." Bigelow Estop. (3d ed.) 562. A strong illustration is furnished by the case of *Daniels* v. *Tearney*, 102 U. S. 415, where it was held that one who had accepted benefits under a statute of Virginia passed under and in aid of the ordinance of secession, could not repudiate his act, although both the ordinance and the statute were unconstitutional and void. In *Ferguson* v. *Landran*, 5 Bush (Ky.) 230, the court said: "Upon what principle of exalted equity shall a man be permitted to receive a valuable consideration through a statute, procured by his own consent, or subsequently sanctioned by him, or from which he derives an interest and consideration, and then keep the consideration and repudiate the statute." Whether it be proper to class such a case as the present under the doctrine of estoppel, or of election, which Mr. Bigelow thinks is a different doctrine (Bigelow Estop., 3d ed., 562, n.), or of ratification, may be a question of difficulty, but, in whatever class it is placed, it is clear that where the taxpayer receives substantial benefits and acquiesces in the action of the public authorities for a considerable length of time, he can not escape the burdens incident to the position which has brought him the benefits. If we assign the case to the last of the classes mentioned, the rights of the municipal corporation are, perhaps, more certain and clear, for, as the author to whom we have referred says, "A man may bind himself by ratifying an act in a way that would not bind him if the doctrine of estoppel were to be applied." Bigelow Estop. (3d ed.) 580.

In the case before us, both the answer and the evidence. have a material infirmity. It does not appear in either that the taxpayer has reaped any substantial benefits from the attempted annexation, nor that it had been generally acquiesced in by the people of the district attempted to be brought into the city, nor does it appear that the city has incurred expense on the faith of the annexation and acquiescence of the citizen. Had these elements been fully developed by the pleadings or evidence, our judgment would be that the appellant could not succeed. We think that as the consent of the property owners in the first instance would have made the proceeding valid, subsequent conduct evidencing such consent, and leading the city to expend money upon the faith that such consent had been given, would preclude them from denying that they had elected to become corporators.

Another question remains, the effect of a curative act adopted in 1879. The appellee's counsel do not discuss this question, but it is discussed by the appellant. One of the positions assumed is that the act is unconstitutional because it is special legislation, and we are referred to the constitutional provisions upon the subject, and to *State, ex rel.*, v. *City of Cincinnati*, 20 Ohio St. 18; *Ex Parte Pritz*, 9 Iowa, 30; *Von Phul* v. *Hammer*, 29 Iowa, 222; *City of Wyandotte* v. *Wood*, 5 Kan. 603; *Atchison* v. *Bartholow*, 4 Kan. 124; *San Francisco* v. *S. V. W. W.*, 48 Cal. 493, to which may be added *Independent School District, etc.*, v. *City of Burlington*, 60 Iowa, 500. We decline to decide the question without a fuller argument, as it is one of very great importance and much difficulty, and for the further reason that the decision of this question is not essential to the determination of this cause.

We have seen that at the time the common council assumed to annex the adjacent territory, it had no jurisdiction at all over the subject-matter, for exclusive jurisdiction was vested in the board of commissioners of the county. It was an attempt by one tribunal to exercise jurisdiction over a subject-matter over which another tribunal had exclusive jurisdic-

tion. There was not simply a defect or irregularity in the proceedings, but there was an absolute want of jurisdiction of the subject-matter, for it was an attempt to exercise a jurisdiction given by statute to an entirely different tribunal. The law upon this subject is thus stated by Judge Cooley, who, in speaking of the power to legalize tax proceedings, says: " One very precise limit to the power to cure these proceedings is this: They can not be cured when there was a lack of jurisdiction to take them. This is a rule applicable to every species of legal proceedings. Curative laws may heal irregularities in action, but they can not cure a want of authority to act at all." Cooley Taxation, 227. In another work the same author says: "And if persons or property should be assessed for taxation in a district which did not include them, not only would the assessment be invalid, but a healing statute would be ineffectual to charge them with the burden. In such a case there would be a fatal want of jurisdiction; and even in judicial proceedings, if there was originally a failure of jurisdiction, no subsequent law can confer it." Cooley Const. Lim. (5th ed.) 472, side p. 383. Mr. Pomeroy, in an elaborate note to the text of Mr. Sedgwick, examines the cases thoroughly and concludes that " It is a general principle, that when an act, proceeding, or transaction is void, and not merely voidable on account of some formal defect, it can not be cured by legislative action; whatever discrepancy in the decided cases exists—and there is much discrepancy—seems to result from a disagreement as to what constitutes an essential defect, rather than from any disagreement as to the principle itself." Sedg. Stat. Cons. (2d ed.) 143.

The general principle stated by these writers is affirmed and enforced in a very great number of cases, and is so firmly settled that the citation of cases is unnecessary, but it will, perhaps, be profitable, in view of the importance of the question, to refer to some of the decisions having a direct bearing upon the phase of the question presented by the case under examina-

tion.  In the case of *Commissioners, etc.,* v. *Carter,* 2 Kan. 115, it was held that the acts of a board of commissioners in a matter beyond their jurisdiction could not be validated by a subsequent statute; and in a later decision this principle was applied to a case where the citizen and his property were brought into the municipal corporation by an ordinance of the city, and a statute was subsequently passed legalizing the proceedings of the common council.  *Atchison, etc., R. R. Co.* v. *Maquillkin,* 12 Kan. 301.  It was said in the course of the opinion in that case: " Both the annexation of said property, and the taxing of it, were void for the want of jurisdiction over the subject-matter thereof.  Retrospective statutes of a remedial nature, curing the defective execution of some power really possessed by the person, tribunal, or officer attempting to exercise it, have often been held valid.  But a retrospective statute attempting to create a power, or to cure a defect of jurisdiction, we believe has never been held valid."  *Hart* v. *Henderson,* 17 Mich. 218, was a case involving the validity of a tax, and it was said by COOLEY, C. J., in delivering the opinion of the court: " Curative statutes may cover any mere irregularity in the course of proceeding for the enforcement of a lawful demand; but they can never cure a want of jurisdiction, either in tax proceedings or those of any other description."  The question in *Hallo* v. *Helmer,* 12 Neb. 87, was as to the legality of a tax and the validity of a curative statute, and it was said : " In an able work on taxation it is stated as a general rule that defects in tax proceedings ' can not be cured where there was a lack of jurisdiction to take them.' Cooley Taxation, 227.  The ordinance in question having been passed without authority, and in defiance of the provisions in the act of incorporation above referred to, is within this rule."  The case of *People* v. *Goldtree,* 44 Cal. 323, decides that " the Legislature possesses the power to pass curative acts, by which the various acts and proceedings of the officers and board charged with the levying and assessing of

taxes, are rendered valid and legal, notwithstanding that irregularities and errors have intervened." But where the officer or tribunal had no power or jurisdiction, the act is void, and subsequent legislation can not cure the defect.

The right to notice is a fundamental one, and it is a rule of wide application, that in order to take from a citizen any rights, or impose upon him any burdens, notice of some kind must be given him. *Wright* v. *Wilson,* 95 Ind. 408; *Campbell* v. *Dwiggins,* 83 Ind. 473; *Tyler* v. *State,* 83 Ind. 563; Cooley Const. Lim. (5th ed.) 615. In this case, however, we are not required to decide whether a statute authorizing the annexation of agricultural lands, or lands not platted, would or would not be constitutional if it made no provision for notice. We now refer to this general principle only for the purpose of showing that where notice is required by the statute under which the proceedings are had, it is a jurisdictional requisite and its absence can not be supplied by a subsequent curative act. Notice is nearly always a jurisdictional question. When the right to entertain jurisdiction of the subject-matter depends upon notice, a curative statute can not make good proceedings taken without any notice at all. *Marsh* v. *Chesnut,* 14 Ill. 223; *Billings* v. *Detten,* 15 Ill. 218; *Albany City Nat'l Bank* v. *Maher,* 20 Blatch. 341; *State* v. *City of Plainfield,* 38 N. J. L. 95; Cooley Tax. 227. In speaking of want of notice the court, in the case last cited, said: "This error being fundamental, annulling the ordinance for want of jurisdiction, by competent notice of the persons affected, can not be remedied by subsequent legislation." In the case before us, notice was required by the statute where the lands were not platted, and the action of the common council was, therefore, not only taken over a subject committed to the jurisdiction of the board of commissioners, but it was also taken without notice to the citizens. The effect of this course was to deprive the citizen of the notice provided by statute, and this we think was an essential jurisdictional defect which a curative statute could not remedy.

Strosser *v*. The City of Fort Wayne.

There are many cases in which a curative statute will be deemed valid. *Kelly* v. *State, ex rel.*, 92 Ind. 236; *Muncie Nat'l Bank* v. *Miller*, 91 Ind. 441. But where there is a total lack of jurisdiction of the subject-matter, the rule laid down in the cases cited does not apply. In the case last cited, the defendant had entered a waiver of service of summons, and it was held that the Legislature had power to validate the judgment rendered against him. The decision falls fully within the rule that an act done by the party in a legal proceeding, but defectively or irregularly executed, may be validated by a subsequent statute. The decision is far from reaching the present case. Had there been no notice at all in the case cited, it would then have been in point, but there was notice, and it was accepted by the party as sufficient, although it was in reality defective.

The question in this case is, not as to the power of the Legislature over a public corporation, but as to its power over the rights of the citizen. The question is not whether the curative act of 1879 is valid so far as it affects the city, but whether it can change the substantial rights of a private citizen. That act can not be allowed to take from the citizens rights vested in them prior to its passage, and can not, therefore, be deemed to validate such a proceeding as that taken by the city in this case. Irregularities and defects in annexation proceedings it may remedy, but it can not make valid an order of annexation made by one tribunal in a case where another had exclusive jurisdiction and where notice to the property owners was required.

Judgment reversed.

ZOLLARS, C. J., did not participate in the decision of this case.

Filed Feb. 25, 1885.