JAMES MURRAY, Respondent, v. KANSAS CITY, Appellant.

Kansas City Court of Appeals, June 22, and December 7, 1891.

1. **Municipal Corporations:** CONTRACT TO EXTEND STREET. A city can make a binding agreement with a contractor to build an extension of a public street, though it may not at the time have secured the right of way for such extension; and by such contract the city undertakes by implication to secure the right of way, and upon failure to comply with such obligation, whereby the contractor is prevented from doing or completing said work, the city becomes liable to the contractor for damages by him thereby suffered.

2. ————: ANNULLING CONSTRUCTION CONTRACT. Where a city made a contract for the construction of an extension of a public street, but failed to furnish the right of way therefor, to the damage of the contractor, it cannot thereafter annul the contract under a provision therein authorizing an annulment thereof for failure to fulfil the same, or for other good cause, or for the interest of the city.

*Appeal from the Jackson Circuit Court.*—HON. JAMES GIBSON, Judge.

AFFIRMED.

*R. L. Yeager*, for appellant.

(1) The respondent was not entitled to recover under the pleadings and evidence, for the reason that it stands admitted that the viaduct, by the contract, was to be built upon and over private property. The respondent had full knowedge of this fact. The city had no power or authority under its charter to build the viaduct upon private ground, and any contract made by the city for such purpose was without power or authority, and any such contract was *ultra vires*.

When a person enters into a contract with the city, it is his duty to know that the city has the power to make the contract. 1 Dill. on Mun. Corp. [ 4 Ed.] sec. 447; *Keating v. Kansas City*, 84 Mo. 415; *Baltimore v. Musgrove*, 48 Md. 472; *Sturtevant v. Brant*, 53 Cal. 247; *People v. Baraga*, 39 Mich. 554; *Morgan v. Monzie*, 60 Cal. 348. ( 2 ) The city, having in express terms reserved the power to annul the contract, and having in good faith exercised the power, the respondent was not entitled to recover. *Bietry v. New Orleans*, 22 La. Ann. 21-4; *Brady v. Steam Packet Co.*, 13 Pet. 89; *Canal Co. v. Hill*, 15 Wall. 94; 1 Addison, Contracts [ Morgan's Ed.] sec. 361; *Blumb v. Kansas City*, 84 Mo. 112-16.

*W. A. Alderson* and *F. P. Sebree*, for respondent.

Cited the following cases: *Ahern v. Boyce*, 19 Mo. App. 552; *Allamon v. Mayor*, 43 Barb. 33; *Bean v. Miller*, 69 Mo. 384; *Bill v. Denver*, 29 Fed. Rep. 344; *Bucroft v. Council Bluffs*, 63 Iowa, 646; *Byron v. New York*, 54 N. Y. Sup. Ct. 411; *Dooley v. Kansas City*, 82 Mo. 444; *Hitchcock v. Galveston*, 96 U. S. 341; *Hunt v. Boonville*, 65 Mo. 620; *Keating v. Kansas City*, 84 Mo. 415; *Kugler v. Wiseman*, 20 Ohio, 361, 374; *McCullough v. Baker*, 47 Mo. 401; *Ditch Co. v. Zellerbach*, 37 Cal. 543, 578; *Moore v. New York*, 73 N. Y. 238, 245; *Parke v. Kitchen*, 1 Mo. App. 357; *Scofield v. Council Bluffs*, 68 Iowa, 695; *Railroad v. Springfield*, 85 Mo. 674.

GILL, J.—In November, 1887, the City of Kansas by ordinance provided, for the construction of an iron bridge or viaduct from the top of the bluff at Fourth street passing west across and over the railroad tracks below to Mill street,—said space from the bluff to said Mill street being designated as the extension of Fourth street. Murray contracted with the city for the construction of the stone piers which were to support the

structure. He proceeded in pursuance of his contract, got some material together and did some work on construction. But at this point the Hannibal & St. Joseph Railroad Company, owner of the tracks at the foot of the bluff, sued out an injunction against the city and Murray, and stopped the work. The grounds alleged for this injunction were, *first*, that the city had no right of way or street across the tracks, and, *second*, even if it had a street there the piers were about to be erected in such a manner as to work a destruction of the prior easement of the railway company. On a final hearing the injunction was in June, 1888, made perpetual— whether for one or both the above reasons does not clearly appear. These litigants, however, have assumed that the court in said injunction proceeding held that there was no extension of Fourth street, and that said viaduct was being erected over and across private property. Plaintiff then being stopped from his work by the city's failure to acquire a right of way brought this action for damages. A verdict and judgment was had in plaintiff's favor for $520, and defendant appealed.

I. On this appeal the only point made by the city counselor is, that, under the pleadings and evidence, plaintiff is not entitled to recover. To sustain this contention, it is claimed, *first*, that the contract between the city and Murray was *ultra vires*, in that it provided for the erection of a viaduct upon and over private property. That the city had general authority to construct a viaduct is not questioned, but it is said that, because this was to be built at a point where the city had not then legally acquired the right of way, the contract was outside the powers of the municipal corporation, and, therefore, void. In our opinion defendant's counsel has stated this proposition too strongly. He assumes in his argument and brief that plaintiff contracted with the city to do this work, knowing that the same was to be erected on private property ; and, were

this true, then we are not prepared to dispute the contention that plaintiff could not recover. If Murray jointly with the city intended to enter upon the property of a third party and commit a trespass by the erection of the stone abutments thereon, then it may be that he should not recover for the work done. However, that is not this case, and we, therefore, express no opinion on such a state of facts. There is nothing in this record tending to sustain such a claim. The ordinance, pursuant to which Murray and the city contracted, clearly contemplated the work to be done *on and along a street of the* city ; the language is : " That an iron viaduct upon piers and footings of masonry shall be constructed *along the extension of Fourth street* from the west line of Bluff street to the east line of Mill street," etc., and whether the city *then* had the right of way for such extension, or meant to acquire such right in the future, had nothing to do with the validity of the contract. It was in the contemplation of the parties to erect the viaduct on the street, not on private property. The city had full authority under its organic law to secure the right of way, if not already acquired. And by its contract with Murray it impliedly agreed to secure the place for such structure. We know of no reason why the city could not contract for the construction of the viaduct in advance of securing the right of way for its location, just as a railroad company may contract for the grading of its roadbed before securing the entire right of way. *Bean v. Miller*, 69 Mo. 384. We hold then that Kansas City made a binding contract with Murray, and that by such contract the city undertook, by implication, to secure the right of way for the viaduct ; that said city failed to comply with such obligation, and became at the date of said perpetual injunction liable to plaintiff for damages by him thereby suffered.

II. Several months, however, after the city was thus in default on said contract, the city engineer

attempted to annul the contract with Murray by addressing to him a writing to that effect, and this is now relied on to defeat this action. The contention is based on the following stipulation in the contract: "The City of Kansas hereby expressly reserves to her city engineer the right of refusing or rejecting at any time during the progress or at the completion of this contract any work done or material furnished, which, in his opinion, may not be in strict compliance with this agreement, and also expressly reserves to her city engineer the power to suspend or annul this contract or suspend the doing of the work thereunder at any time for any failure on the part of the said party of the first part to fulfil the same or other good cause, or for the reason that the interest of said city may demand such annulment or suspension, etc. Giving to this clause of the contract its full reasonable force, the defendant cannot protect itself from the liability which is imposed by the facts of this case. It was never intended to serve the purpose for which it is here invoked. The city cannot be allowed to violate its contract and then, by annulling the same, relieve itself of a liability theretofore fixed and determined. Obligations cannot be paid off in that manner. The city in this matter presents the anomalous attitude: *First*, contracting to secure the right of way; *second*, failing or refusing to do so, and, *third*, claiming the right to annul the contract because of its own default. The evidence made a case for the plaintiff; the judgment was for the right party and must be affirmed. All concur.