HENRY C. WEEKS, Appellant, *v.* THE RECTOR, CHURCHWARDENS AND VESTRYMEN OF TRINITY CHURCH IN THE CITY OF NEW YORK, Respondent.

*Building contract making time of its essence — duty of the owner to procure the proper permit — right of the contractor to sue for damages occasioned by the owner's delay in doing so.*

An owner of real property who enters into a contract for the erection of a building thereon, which requires the contractor to proceed promptly and diligently with his work, makes time of the essence of the contract, and imposes upon the contractor a penalty for a failure to complete the building within the prescribed time, thereby assumes an implied obligation to perform with due diligence any act required of him by law in connection with the contract, such as to procure a building permit from the public authorities, although the contract contains an implied condition that the erection of the building shall not be commenced until the permit has been obtained.

*Semble,* that the fact that the contractor, notwithstanding the delay occasioned by the owner's failure to obtain such permit with due diligence, goes on and finishes the work and receives his compensation therefor, does not preclude him from bringing an action for the damages occasioned by such default on the part of the owner.

APPEAL by the plaintiff, Henry C. Weeks, from a judgment of the Supreme Court in favor of the defendant, entered in the office of the clerk of the county of New York on the 8th day of January, 1900, upon the dismissal of the complaint by direction of the court after a trial before the court and a jury, and also from an order

entered in said clerk's office on the 5th day of January, 1900, deny-
ing the plaintiff's motion for a new trial made upon the minutes.

*Eugene Frayer*, for the appellant.

*Flamen B. Candler*, for the respondent.

RUMSEY, J.:

It is alleged in the complaint that on the 19th of June, 1895, the
plaintiff made a contract with the defendant by which he agreed to
finish the mason work on a building which the defendant was about
to erect; that by the terms of the contract he was to provide at his
own expense all materials and labor, scaffolding, implements and
cartage for the work; that he was to proceed with the work and
every part and detail thereof in a prompt and diligent manner and
should do the several parts thereof at such times and in such order
as the architect might direct, and should finish the work and com-
plete the building ready for occupancy by the tenants on or before
the 1st day of February, 1896; that the defendant agreed to pay
for the work a certain price particularly stated in the complaint.
The plaintiff further alleges that, in accordance with the terms of
the contract, he entered into the performance of it and proceeded to
erect the building therein provided for, ordering supplies and enter-
ing into sub-contracts running for the entire work; that he con-
tinued to proceed diligently as long as he was allowed to do so by
the defendant, and was on his part always ready and willing to per-
form.   He also alleges that the defendant did not obtain the permit
from the building department in time so that he could proceed with
his work as he had agreed to do, but that on the 7th of August,
1895, he was directed by the architect who had the supervision of
the erection of the building, to stop the work on a certain portion of
it, and that on the fourteenth he was directed to stop work on the
entire building, and was not permitted to resume until the eighteenth
of September.   He alleges that, because of this compulsory stoppage
of the work during that time, he was materially damaged in particu-
lars set out in the complaint but not necessary here to consider.

The plaintiff bases his claim to recover upon a further allegation
in the complaint that by the terms of the contract the defendant
covenanted with the plaintiff that it had done or would do every-

thing necessary to be done on its part to enable the plaintiff continuously and advantageously to proceed with the work therein contracted for in a prompt and diligent manner until it should be finished and completed according to the drawings and specifications furnished by the defendant, and that it had secured or would secure the approval of the plan by the superintendent of buildings, and had obtained or would obtain a permit for the erection of the building according to the plans and specifications, in such time as would permit the plaintiff continuously and advantageously to proceed with the work until it should be wholly finished. It is alleged that this agreement was violated by the defendant, and because of that violation that the plaintiff suffered damage. Upon the trial, after the plaintiff's case was closed, the learned trial justice concluding that the plaintiff had not shown any cause of action, dismissed the complaint. A motion for a new trial was made and denied, and from the judgment dismissing the complaint and from the order denying the new trial, this appeal is taken.

The defendant had not in terms assumed in the contract the obligations which the plaintiff insists it had incurred, and the first question presented is whether any such obligation was to be implied. It is quite evident that the obligation upon the plaintiff to proceed promptly and diligently with this work gave to him the right to enter upon the premises and involved necessarily an obligation on the part of the defendant that he should not be interfered with while he was engaged in completing his contract, and also an obligation on the part of the defendant that if the law required any act to be done by it before the work could be commenced under the contract it would perform that obligation. The rule of law is that when the obligation of performance by one party to a contract presupposes the doing of another act by the other party prior thereto, there arises an implied obligation of the second party to do the act which the performance of the contract necessarily involves. (*Del Genovese* v. *Third Ave. R. R. Co.*, 13 App. Div. 412; *Allamon* v. *Mayor*, 43 Barb. 33; *Mansfield* v. *N. Y. C. & H. R. R. R. Co.*, 102 N. Y. 205.)

By section 503 of the Consolidation Act, which was in force when this contract was made, it was the duty of the owner of property upon which he intended to erect a building to file a statement of

specifications and a full and complete copy of the plans of the work with the superintendent of buildings, and to procure from him a permit to build before proceeding with the work, and it was forbidden to proceed with the erection of the building until the statements and plans should have been so filed and approved by the superintendent of buildings. It being made by the law the duty of the defendant to procure this permit, there arose under the authority of the cases cited above an implied obligation that it would procure the permit within the time necessary to enable the plaintiff to proceed with his work diligently and promptly as he had agreed to do in his contract. So, although the allegation upon that subject in the complaint is a conclusion of law, yet it correctly states the obligation of the defendant towards the plaintiff, necessarily resulting from the contract. If the plaintiff proved the violation of that obligation, he was entitled to recover such damages as he might have suffered thereby.

The allegations of the complaint were substantially proved. There was evidence from which the jury might have inferred that the plans and specifications were not filed until some time after the contract was made; that when filed they were defective in form so that the superintendent of buildings refused to issue a permit; that the attention of the defendant was called to that defect, but that it refused or neglected to remedy it until it was too late to obtain a permit to enable the plaintiff to go on with his work, and that as a result of the failure to obtain the permit the architect required the plaintiff to stop work on the contract, and he was compelled to and did cease work when so ordered.

The evidence on these points was, we think, sufficient to entitle the plaintiff to have the question submitted to the jury whether the defendant had not failed to perform the implied obligation which it assumed when the contract was entered into.

But the defendant says that there was in this contract an implied condition to the effect that the actual erection of the building should not be commenced until the permit had been obtained. Undoubtedly that was true, but that implied condition was coupled with the other implied condition that the defendant would obtain that building permit as the law required it to do in time to permit the plaintiff to go on with his work as his contract required. This is empha-

sized by the fact that the parties had made time of the essence of the contract and imposed a penalty upon the plaintiff for a failure to complete the building within the prescribed period.

It is said, also, that the architect being made by the contract an arbitrator between the parties in case of a dispute arising respecting the meaning of the plans and drawings, his directions given to the plaintiff on the seventh and fourteenth of August to stop work were binding, and the plaintiff cannot complain of them unless they were unreasonable or given from some improper motive. This provision of the contract has nothing to do with the stoppage of the work by the architect. It does not appear nor is it suggested that at that time any doubt or question had arisen as to the plans or drawings or the manner of doing the work. It is alleged in the complaint and the evidence tended to prove that when these instructions were given, the plaintiff was proceeding with the work in pursuance with the plans and specifications, and that no question had arisen with respect to them, and there was no reason for the architect to take any action upon them. The architect does not claim to have given these instructions because of any necessity arising under that subdivision of the contract. It is said, however, that the architect was the agent of the plaintiff, and that, therefore, the directions which he gave at that time to stop the work upon the contract were directions given by the plantiff himself and that the defendant was not in any way bound by them. It appears that the architect was employed by the defendant to supervise the doing of this work; that not only had he no contractual relations whatever with the plaintiff, but no relation of any kind except such as arose out of his employment by the defendant to supervise the erection of this building. There is nothing in this case to show that there was between the plaintiff and the architect any relation of principal and agent whatsoever.

But it is said that the plaintiff, having gone on and finished the work after he had been permitted to do so on the eighteenth of September and having received his compensation therefor, waived his right to bring any action for damages because of the failure of the defendant to perform the contract on its part. It appears in the case that it was agreed between the parties that the payment of the contract price should not prejudice the right of the plaintiff to bring

this action, but even if that agreement had not been made, the receipt by the plaintiff of the stipulated contract price for the performance of the contract would not operate as a waiver of his right to proceed against the defendant for a violation of its agreement. When the plaintiff was compelled by the act of the defendant to cease work on this building he was not called upon to rescind the contract or to refuse to proceed further with it at the peril of waiving any damages which he might have suffered, but he was at liberty to go on with the work, considering the contract still in force, and when he had finished maintain his action to compel the defendant to pay the increased expense to which he had been put by its act. (*Allamon* v. *Mayor*, 43 Barb. 33.)

Upon the facts proved, we are of the opinion that the plaintiff had made out such a case as entitled him to go the jury upon the question of the liability of the defendant upon this implied obligation. In that view of the case we have not deemed it necessary to consider the exceptions taken by the plaintiff to the exclusion of evidence. The questions raised by them may not arise upon the new trial which must be ordered in the case, and, therefore, no determination as to the correctness of the rulings need be made. Neither is it necessary for us to examine into the question of damages. It is sufficient to say that upon this trial the plaintiff made it appear that he would be entitled to some damages, but as the rule concerning the measure of damages was not considered by the court below it is not necessary to consider it here. The judgment and order must be reversed, therefore, and a new trial ordered, with costs to the appellant to abide the result of the action.

VAN BRUNT, P. J., PATTERSON, O'BRIEN and McLAUGHLIN, JJ., concurred.

Judgment and order reversed, new trial ordered, costs to appellant to abide event.