# WALTER COONAN, Respondent, v. CITY OF CAPE GIRARDEAU, Appellant.

### St. Louis Court of Appeals, June 14, 1910.

1. **DAMAGES: Liquidated Damages: Reasonableness.** Where a contractor enclosed a certified check for one thousand dollars with his bid for the construction of sewers in a city of the third class, under an agreement that the check should be forfeited to the city as confessed and liquidated damages for his failure to enter into a contract within the stipulated time, if his bid was accepted, and the damage to the city by his failure to enter into the contract within such time could not readily be measured, and the amount to be forfeited was not unreasonable, in view of the fact that fifty or sixty thousand dollars were involved in the contract, the amount of the check was stipulated damages and not a penalty.

2. **MUNICIPAL CORPORATIONS: Contract for Construction of Sewers: Duty of City.** Where a city enters into a contract for the construction of sewers, it is the duty of the city to furnish the contractor a right of way, along which he might construct the sewers.

3. **————: Railroads: Contracts for Work on Unacquired Property.** A railroad or municipality may contract for work to be done on property not yet acquired, but which may be acquired by eminent domain.

4. **CONTRACTS: Non-Performance: Belief of Other Party's Inability to Perform.** A party to a contract is not relieved from his obligations thereunder, because of his well-founded belief that the other party will be unable to perform.

5. **MUNICIPAL CORPORATIONS: Contract for Work on Unacquired Property: Enforcibility.** In an action to recover money forfeited as liquidated damages to a city because of the contractor's failure to file his bond and enter into a contract for certain improvement work after his bid was made and accepted, it was no excuse to the contractor, for failing to file the bond, that the city may not have been able to acquire the property upon which the improvements were to have been made, within the time allotted for such work, thereby leaving him damaged without remedy, for the reason he should have investigated this before making his agreement, and for the further reason the city cannot be deprived of its rights on a mere possibility of inability to acquire the property.

Appeal from Cape Girardeau Common Pleas Court.— *Hon. R. G. Ranney,* Judge.

149 App—39

REVERSED.

*M. A. Dempsey* for appellant.

(1)   Under sections 5876 to 5893 adopted by the voters, the city had "the power to accept and acquire by gift, devise, purchase or by condemnation proceedings, both within and beyond the territorial limits of the city, the right of way for drains and sewers." The condemnation proceedings provided is similar in character to proceedings to condemn a railroad right of way, is summary and speedy, and permits taking possession and construction as soon as the damages are awarded upon reviewing the assessment by the commissioners.
(2)   A city or other public corporation may levy assessments for the construction of improvements upon private property if it has the means of securing an easement in such property by subsequent proceedings in eminent domain. Page & Jones, Taxation by Assessment, sec. 455.

*Oliver & Oliver* for respondent.

(1)   An action for money had and received lies whenever one person receives money for the use of another person and neglects to turn it over on demand. It is immaterial how the money came into the defendant's hands. The action is one favored in the law. Crigler v. Duncan, 121 Mo. App. 381, and cases there cited; Banking Co. v. Com. Co., 195 Mo. 262; Henderson v. Koenig, 192 Mo. 690; Meekins v. Sullivan County, 154 Mo. 136. (2)   It was the duty of the city to secure a right of way for the laying of the sewer over the private property of individuals in ranges A and H. It had the power to condemn, the respondent did not. The contract required the work to be completed within six months and that it should be carried on "uninterruptedly." The city, although, requested, refused to furnish a right of way. The respondent was therefore forced to either abandon his contract or else become involved in a suit with the city for failure to complete his under-

taking within six months, or be sued by private persons for trespassing on private property, or be enjoined. Under such a showing he had the clear right to withdraw and ask for his check. Ash and Gentry v. Independence, 79 Mo. App. 70; Reaffirmed in Ash and Gentry v. Independence, 103 Mo. App. 299. (3) The city, like the state, is prohibited from taking private property without just compensation. It is also prohibited from entering upon private property without first paying to the owner such just compensation. It cannot take the land and give the landowner in exchange for it, a law suit, which may not terminate for years. Nor is there any reason why a landowner should be compelled to part with his property to the city or the public on credit. It was the duty of the city therefore to have either returned to this plaintiff his money or else have given to him absolute right to go upon this 2000 feet of private property. Sec. 21, Art. II, Constitution Mo.; Walther v. Warner, 25 Mo. 277; Bradley v. Railroad, 91 Mo. 493; State ex rel. v. Lubke, 15 Mo. App. 152. (4) When the evidence shows that the judgment was for the right party it will not be disturbed, notwithstanding erroneous instruction may have been given or refused. Hess v. Railroad, 127 Mo. App. 304; Real Estate Co. v. Realty Co., 103 Mo. App. 24; Goodson v. Embleton, 106 Mo. App. 77; Bruce v. Wolfe, 102 Mo. App. 384. (5) The judgment in this case was for the right party. It is in keeping with common honesty and fair dealing, and should be affirmed with ten per cent damages as a penalty for vexatious appeal. Schwaner v. Boiler Co., 19 Mo. App. 534; Cordell v. Bank, 64 Mo. 600; Phillips v. Phillips, 107 Mo. 363.

GOODE, J.—Action on common count for one thousand dollars, money had and received by defendant to the use of plaintiff, to which a general denial was filed. Prior to February 4, 1907, the voters of the city of Cape Girardeau, a city of the third class, had adopt-

ed the provisions of sections 5876 to 5893, inclusive, of the Revised Statutes of Missouri, 1899, relating to the construction of sewers, and on November 19, 1906, pursuant to the authority conferred by the voters, the city council had enacted an ordinance to adopt plans and specifications for a system of sewers in district No. 1 in the city, which provided for the construction of the system in accordance with the plans and specifications already prepared, and estimates of cost submitted by the city engineer; provided, too, for letting the contract for the construction of the sewers and to pay the cost of them in special taxbills issued against the lots of land in the district. Plans and specifications, maps, profiles, details and stipulations showing the location of the sewers and the manner in which they were to be constructed, were attached to the ordinance as "Exhibit B" and made part of it. Bids were advertised for and February 2, 1907, plaintiff submitted a bid in competition with two other bidders. Plaintiff's bid said he had carefully read the specifications and all instructions relating to the system of sewers, and in bidding on the same, did so in good faith and in strict accordance with the requirements of the specifications, ordinance and instructions. The bid went minutely into the prices for the different kinds of work, and then set forth this clause:

"The undersigned further propose and agree that if awarded contract and the above proposal, I will make the required bond within twenty days from date of award and will begin the actual work of construction within thirty days from said date, or if I should fail to do so, the inclosed certified check for $1000 shall be forfeited to the city of Cape Girardeau as confessed and liquidated damages resulting from said failure.

"The undersigned hereby declare that the parties whose names are given below are the only persons financially interested in this proposal; that it is made in good faith without collusion or fraud; and that if the contract is awarded to me, such contract will be executed in a

strictly first-class, good and workmanlike manner and in full conformity with your specifications hereto attached."

That proposition was signed by plaintiff who gave his place of business as East St. Louis, and inclosed with his proposal a check for $1000, dated February 2, 1907, payable to Wm. H. Coerver, mayor of Cape Girardeau, as provided for in the ordinance and the instructions how to bid, which were attached to the ordinance as part of it and hence would become part of the contract for the work when the contract was made with the successful bidder; for the ordinance entered into the contract as an integral part of the latter. February 4, 1907, or two days after plaintiff's bid was submitted, it was accepted by a resolution of the city council of Cape Girardeau, conditioned on plaintiff's filing his bond for one-third the amount of his bid, as required by the ordinance. The resolution authorized the mayor to approve the contract with plaintiff in the name of the City and to approve the bond he might submit. Section 7 of the ordinance providing for the construction of sewers, read as follows regarding the deposit which should accompany each bid:

"Each proposal shall have enclosed with it a certified check for $1000, payable to the order of Wm. H. Coerver, mayor, which shall be retained as a guaranty of good faith on the part of the bidder, until the bidder to whom the contract may be awarded, shall have entered into contract and executed satisfactory bond as hereinafter required, when said checks will be returned."

Minute printed instructions were sent to all persons proposing to bid on the work regarding how bids should be made and what they should cover, and said they should cover not only the cost of the work and material for constructing the sewers, but also the cost of such engineering and inspection work as might be required during the contract; saying further each bid should have inclosed with it a check for one thousand

dollars as guaranty of good faith on the part of the bidder, until he had made the bond required for compliance with his contract. Those instructions, as already said, are part of the ordinance providing for the sewer system and would be part of the contract for putting in the system. The instructions contained this clause:

"The following proposal and acceptance thereof, when properly filled out and signed in duplicate by the contractor, party of the first part, and by the mayor and city clerk of Cape Girardeau, party of the second part, shall constitute a legal and binding contract between said parties; and the foregoing specifications and instructions to bidder shall constitute a part of said contract. No verbal agreements contrary to said specifications and proposal, shall be of any force or effect, but all changes or variations from said specifications and contract shall be in writing and duly signed by both parties to the agreement."

Next followed in the instructions the form of the proposal, and these clauses were also contained therein:

"Section 6. A good and satisfactory surety bond amounting to one-third of the amount of the contract and subject to the approval of the mayor and city clerk of Cape Girardeau will be required of bidder to whom contract may be awarded. Said bond shall be furnished within twenty days after receiving the award. It shall fully guarantee and indemnify the city of Cape Girardeau and the city council thereof against any and all damage or loss which may in anywise result from the connection of said city with the contractor or by reason of his failure to fully and faithfully carry out the provisions of his contract.

"Section 7. Bidders will be expected to make such personal examination of the existing conditions as will enable them to bid intelligently."

It will be perceived plaintiff was required to furnish a bond to the amount of one-third of the amount

of his bid, within twenty days after the bid was accept-
ed, and the amount of the bid for the work was between
fifty and sixty thousand dollars.  A few days after
plaintiff was notified the contract had been awarded to
him, he went to Cape Girardeau for the purpose of ex-
ecuting the contract and bond; the contract having. been
signed by the mayor in behalf of the city and sent to
plaintiff, who had not signed it, but intended to do so
on his visit to the city.  He took an attorney with him
and the two ascertained while in Cape Girardeau and
before the contract and bond had been signed, the plan
of the district sewer system called for the construction
of sewers not only along various streets and alleys in
the city, but through two thousand feet of lots owned
by private citizens.  Plaintiff saw one or two of the own-
ers and asked them if they would permit sewers to be
constructed through their lots and they answered they
would not unless the city bought the right of way or
condemned it.   Thereupon plaintiff and his attorney
held a consulation with the mayor and an attorney who
represented the city as special counsel   about what
should be done, and the parties decided the city was
bound either to acquire the right of way through the
private lots by purchase or condemnation, or deviate
from the course of the sewers as laid down in the plans
so as to miss those lots.  The only step the city had taken
looking to the construction of sewers through the private
lots, was the appointment of a committee of the council
some time in 1906, to attend to the matter; as we under-
stand, by reaching an agreement with the property own-
ers if possible, but nothing had been done toward ac-
quiring or condemning any right of way across at least
some of the lots; and it does not appear the committee
had acted or reported.  In the instructions to bidders
was this section:

"Change in Plans.  The board through the engineer,
shall have the right to make any changes in the lines,
plans, forms, or quantity of the work herein contem-

plated, either before or after the commencement of the work, giving due notice to the contractor, in writing, of any such changes. If such changes diminish the quantity of the work to be done, they shall not constitute a claim for anticipated profits; if they increase the quantity of work, such increase shall be paid for upon the basis of the unit prices stipulated in the contract. Such proportions of said increased work as may not be covered by the unit prices, will be classed as extra work, and will be paid for as hereinafter provided.

"It is distinctly understood and agreed, however, that such changes in plans or quantities shall not be construed as in any sense vitiating or modifying the contract or relieving the contractor in any degree from the responsibilities of his contract; except that any material increase in the quantity of work will be considered sufficient ground for granting an extension of time in proportion to such increase.

"The board, however, shall not increase the amount or cost of the work beyond the estimate referred to in Ordinance No. 738, and the contractor shall be allowed extra payment for the cost of engineering and inspection during the time required to execute the increased work."

Plaintiff was willing to execute the bond and contract as soon as the city acquired the right of way across the private lots, and so notified the officials. He left Cape Girardeau and did not return again until the last day of the period during which he might execute and file the bond and contract; and then learned nothing had been done toward acquiring the right of way over those lots; the mayor saying he had forgotten about the matter, and in consequence plaintiff refused to file a bond, sign the contract or enter upon the execution of the work; refused also to attend a special meeting of the council to consider the situation. The ordinance provided plaintiff should be paid exclusively in taxbills; provided, further, the work should be carried on continu-

ously and uninterruptedly so as to insure its completion within six months after it was begun, but said if it should be "delayed or interrupted by the city council or officers of the city of Cape Girardeau, or by the act of God or any other cause beyond the control of the contractor, the time of such delay or interruption shall be added to the six months; but this delay shall not constitute a claim by the contractor against the city or the city council for damages or loss of anticipated profits." The municipal officers, clerk and mayor, testified the city did not refuse to make an arrangement about the right of way by purchase, condemnation or changing the course of the sewers; but in point of fact neither had been done when the time elapsed in which plaintiff could file his bond, and the right of way through the lots had not been acquired at the time of the trial. March 18, 1907, and after the lapse of the period for filing the bond, the city council, in the absence of plaintiff and without notice to him, adopted a resolution declaring the check he had filed with the city forfeited, and directing the mayor to cash the check and deposit the proceeds to the credit of the general revenue of the city, which was done. It is agreed the only right the city had to the money was by virtue of plaintiff's bid and the other matters aforesaid; agreed, further, the city was ready and willing up to March, 1907, to enter into a written contract with plaintiff for the construction of the sewer system according to the plans and specifications, but plaintiff refused to enter into the contract or execute the bond. At the close of the evidence the court refused to declare plaintiff could not recover; declared, however, that the submission of the bid by plaintiff and its acceptance by defendant constituted a legal and binding contract; refused to declare the plan for the sewers across private property was not inconsistent with the charter of defendant, did not invalidate the ordinance or excuse plaintiff from furnishing a bond in compliance with his bid; refused to declare the evidence established a breach of

contract by plaintiff and did not establish a breach by defendant, and refused to declare the damages suffered by defendant from plaintiff's breach were not definite and certain, and one thousand dollars was not an unreasonable amount to be recovered as liquidated damages. The rulings on the declarations are unimportant, for the facts are not in dispute and the question of defendant's liability is to be determined from them.

By the very words of plaintiff's bid the amount deposited by him became stipulated damages, to be forfeited to the city if, in the event the contract was awarded to him, he failed to execute the bond called for by the contract within twenty days after the award and begin actual work within thirty days. As to whether the one thousand dollars was to be penalty or liquidated damages, we have no doubt the intention was to agree on the damages; what the city would lose by plaintiff's failure to sign the bond and contract and enter on the execution of the work could not be readily measured and the amount to be forfeited was not unreasonable. Those facts justify the ruling that the amount was stipulated damages. [Morse v. Rathburn, 42 Mo. 594.] Plaintiff agreed if awarded the contract, he would make the bond within twenty days thereafter and begin actual construction in thirty days. His excuse for not complying with this undertaking is that he ascertained meanwhile the plan of the sewer system required sewers to be laid across private property, a fact of which he was ignorant when he bid. There was no mutual mistake regarding this fact, for the city officials had appointed a committee to negotiate with the owners of the lots about right of way, and hence the officials were aware the right of way had not been procured. This circumstance cannot avail plaintiff as a reason why he should not carry out his agreement to make the bond, and begin work under the contract, unless, in contemplation of law, it was a total breach by the city of its obligation, or would render performance by plaintiff an impossibility. The city had

not represented to plaintiff the right of way over those lots had been procured, or that the route of the system was entirely through public ground; neither had it undertaken to obtain the right of way in advance of the commencement of the work, or as the condition on which plaintiff should execute his bond or begin work. That is to say, the city was not in default either from having misled plaintiff into bidding under an erroneous impression about the fact, or from having omitted to perform any part of its obligation up to the time plaintiff refused to comply with his. No doubt it was the duty of the city either to obtain a right of way across those lots by purchase or condemnation; or, if it could not do that, change the route of the sewers as the plans and specifications on which plaintiff bid allowed. In other words, it was the duty of the city to furnish plaintiff a right of way along which he might construct the sewers. [City of Columbus v. Railroad, 137 Fed. 869.] But it was not bound to do so in advance of the execution of the bond, and the fact that the plans as they stood called for sewers across private lots, did not preclude the city from contracting for the construction of the sewers; for, as a last resort, it could employ its power of eminent domain, or probably might divert the route. A railroad company or municipality enjoying the franchise of eminent domain, may contract for work to be done on property not yet acquired, but which may be acquired by said franchise. [Murray v. Kansas City, 47 Mo. App. 105, 108; Bean v. Miller, 69 Mo. 304.] There is nothing in the record to show the city was in default when plaintiff refused to execute his bond, or that it would have been impossible for the city to make an arrangement by which plaintiff could have prosecuted continuously and uninterruptedly the work of putting in the system so as to complete it within six months as the ordinance required. He bid unadvisedly and under circumstances which might cause him a loss; possibly there would have been delay in obtaining the right of way, whereby

he would have been damaged, and perhaps he could not have promptly collected the taxbills wherewith he was to be paid. Nevertheless, these things should have been investigated before he proposed for the work; and in the instructions he was cautioned to examine existing conditions so as to bid intelligently. The case comes down to this, as far as the rule of law governing it is concerned: Plaintiff believed, and perhaps had reasonable cause to believe, the city would be unable to carry out its part of the contract; that is to say, would be unable promptly to furnish a right of way for the sewer system and in consequence he might sustain loss; but this was by no means certain, and the law does not relieve a man from a contractual obligation because he believes with good cause the person with whom he has contracted will not be able to perform. [3 Page, Contracts, sec. 1449; Hathaway v. Sabin, 63 Vt. 527; Southern Lumber Co. v. Supply Co., 89 Mo. App. 141; Hobbe v. Bush Co., 157 Mass. 109; Jewett Pub. Co. v. Butler, 159 Mass. 517, 22 L. R. A. 253; Plummer v. Kelly, 7 N. Dak. 88; In Matter of Carter, 21 App. Div. N. Y. 118; New England Ins. Co. v. Railroad, 91 N. Y. 153.] The argument is put forward for plaintiff that he was released from his obligation to make a bond because, though the ordinance relieved him from responsibility for delays due to the fault of the city, the act of God, or any other cause beyond his control, it precluded his recovering damages against the city or loss of profits, if he was delayed by the act of the city. The argument is this: If peradventure it turned out the city could not procure the right of way across the private lots, or provide any other route for the sewers within the six months allowed plaintiff for completing the work, and if thereby he was put to a long delay and suffered damage, he would have been without remedy; hence had the right to make sure the way was clear for completing the work within the time agreed, before he entered upon it or filed a bond to secure performance. There are two answers to this argu-

ment: First, plaintiff should have made sure of those matters before he submitted a proposal containing an agreement to execute a bond within twenty days after the proposal was accepted and forfeit one thousand dol-. lars if he did not; second, the city cannot be deprived of its rights on the mere chance that it would have been unable to furnish a right of way for the sewer.

The judgment is reversed. All concur.