## STATE OF INDIANA *v.* FEIGEL.

[No. 25,784.   Filed November 20, 1931.   Rehearing denied December 14, 1932.   Petition to reconsider dismissed February 22, 1933.]

*Arthur L. Gilliom,* Attorney-General, and *Connor D. Ross,* Assistant Attorney-General, for appellant.

· *Funkhouser, Funkhouser & Markel* and *Henderson & Henderson,* for appellee.

ROLL, J.—This action was brought by appellee against the State of Indiana and the Indiana State Highway Commission to recover damages on account of alleged breach of a highway construction contract. The complaint, in one paragraph, alleges, in substance, that on February 19, 1924, appellee and appellant State of Indiana, by and through the State Highway Commission, entered into a written contract by the terms of which appellee agreed to furnish the material and labor necessary to construct a certain highway in the State of Indiana, known and designated as "Federal Aid Project No. 65, Section B," extending from the city of Princeton in a northerly direction, for and in consideration of a sum of money mentioned in said contract. A copy of the agreement and appellee's proposal and bond were filed with and made a part of the complaint as "Exhibit A," also a copy of the specifications referred to in the contract were made a part of the complaint and marked "Exhibit B."

Said contract was entered into by said parties after due and legal advertisement, and was let to appellee as the lowest and best bidder.

The defendant State Highway Commission had a corps of engineers, the chief of whom told appellee, on February 19, 1924, to proceed with the construction of

said improvement in accordance with the terms of his contract. Thereupon appellee assembled his machines, tools, plants and labor at the site of the improvement project and made all necessary arrangements and preparations to begin the construction of the same. In order to carry out the contract, of which the highway commission knew, it was necessary for appellee to have considerable equipment consisting of various kinds of road-building machinery, a list of which is set out in the complaint, some of which he then owned and some of which he rented for the particular purpose, and such renting was had at a rental expense of $210 per day, which rental was to begin simultaneously with the beginning of said construction and end upon the completion thereof.

Instead of hiring a superintendent appellee did the superintending of the work himself, and the reasonable value thereof was $10 per day.

In order to properly carry on the work it was necessary to and he did have a permanent organization. The expense of maintaining this permanent organization, which he denominates "overhead" expense, included office rent, telephone, office help, assistant superintendent, and other employees, and this expense was continuous whether the work was going on or delayed, whether the employees were idle or at work, and the expense thereof was $20 per day.

Appellee leased a plot of ground for his construction camp and equipment and had railroad siding put in for use in such construction.

On March 26, 1924, the commission, by its chief engineer, told appellee to receive shipments of cement and other materials, and to have his equipment ready to begin laying pavement by April 15, 1924, and, in pursuance thereto, he ordered cement and other materials,

and in all things prepared to commence work according to contract.

That, under the contract, it was the duty of the commission to furnish the right of way for said highway, but it failed, neglected and refused to secure any right of way so that the work of construction could go on, though often requested by appellee so to do, and, on account of such failure, his overhead expense went on and his equipment lay idle, whereby he suffered loss of $22,777.21 in payroll, rents and overhead expense.

When appellee reached a certain point on said highway with his grading it was discovered that the engineer in charge, through negligence and error, had made a mistake, and thereby required appellee to make a fill of seven inches in excess of the proper depth; but that after the fill had been made said engineer discovered his mistake, and appellee was required by said engineer to remove said excess of seven inches of dirt; and because thereof he suffered a total loss of $436.11.

At one place the engineer, had so fixed his stakes, that had said right of way been graded and paved in accordance therewith it would have been impossible to keep said paving, shoulders and ditches on the right of way, which had theretofore been obtained by said commission, and because of the delay occasioned thereby appellee was damaged $276.92.

That all delays and errors as above set out were without any fault on the part of appellee, but due wholly to the failure, neglect and refusal of the commission to obtain said right of way, and said errors and negligence of the engineer in charge; said commission at all times before the beginning of said construction and during the progress thereof had full knowledge of not having the right of way and of the hindrance, delay and damages suffered by appellee. Appellee prays for judgment

on account of the breach of said contract, $21,054.13.

Appellant's demurrer for want of facts was over-ruled, and thereupon answers in four paragraphs were filed. The first paragraph was general denial; the second a plea of payment; the third alleged, in substance, the entering into the contract by and between appellee and appellant through the highway commission, and by express provisions of the standard specifications, which were attached to and made a part of the complaint, and which formed a part of the contract between the parties, appellee was invited to examine carefully the site of the work contemplated in the contract, and it was expressly provided that appellant, through said commission, should assume that appellee had judged for and satisfied himself as to the conditions to be encountered and as to the character, quality and quantity of work to be performed and materials to be furnished.

Appellee did examine the site of the proposed work and knew or had the means of knowing the facts as to the ownership of all lands included in the proposed improvement and any easements on and over said land, and, by reason of such facts, he had knowledge that appellant, through said commission, had not acquired an easement for the location of said highway on the land as proposed in said contract and in the records and files of said commission.

Notwithstanding the fact that appellant, through said commission, had not acquired all of the right of way for the location of said improvement, and with full knowledge of such facts, appellee entered into said contract and undertook the work contemplated therein.

By express provision of said specifications, it was provided that the chief engineer of said commission should have the authority to suspend all or any part of the work when, in his opinion, conditions were such that the work could not be done properly, in which case

appellee was required to store all materials, provide adequate drainage, and take such other precautions as would protect the work already done and would protect the traveling public.

By express provision of said specifications it was further provided that, when the work should be delayed or suspended through no fault of the contractor, the director should allow a reasonable extension of time for the final completion of the contract, and that, in case of a suspension of the work, the extension should be in direct proportion to the length of time during which the work was suspended.

It was further provided in said contract that the compensation therein should constitute full payment for the work indicated complete in place, including the furnishing of all materials, tools, machinery, equipment, labor and work incidental thereto, as well as any and all expenses incurred by reason of any cause whatever, except as otherwise provided in said specifications and contract.

otwithstanding said provisions plaintiff entered into said contract and undertook the work as proposed herein, and with the full knowledge that all of the right of way had not been procured over the line of said highway as proposed in the plans and specifications therefor; that said contract contained no provisions fixing the time for the procuring of said right of way, and that, notwithstanding said fact, the defendant so entered into said contract and undertook the work therein and accepted the provisions of said contract above referred to as to the extension of time caused by delays, and that said contract was extended from time to time by this defendant through the Indiana State Highway Commission.

From time to time, as provided in the specifications, appellee accepted monthly estimates as the work pro-

gressed, and, upon completion of the work, appellee accepted the final estimate, and a voucher was executed for the amount of said final estimate, which was duly forwarded to the Auditor of State and a warrant issued thereon, which warrant was accepted by appellee as the final payment for the work done and performed under said contract.

Appellee having accepted all benefits of the extension provisions and other provisions of said contract above referred to and by reason of all facts herein alleged is estopped to assert any claim against the State of Indiana arising out of the work done under said contract or from claiming any further compensation for expenses caused by delays.

Appellant's fourth paragraph pleads the same facts as the third, but urges that they constitute a waiver instead of an estoppel.

Appellee demurred to the second, third, and fourth paragraphs of appellant's answer, which demurrer was sustained by the court.

There was a trial by the court, which resulted in a judgment in favor of appellee for $13,995 against appellant. As to the other defendants the judgment was in their favor. Appellant filed its motion for a new trial, which was overruled. Appellant assigns as errors the court's ruling on the demurrers, and the overruling of its motion for a new trial.

Appellant, by its demurrer, challenges the sufficiency of the complaint and makes the point that the state is not liable in damages for the failure of the officers of the State Highway Commission to secure the right of way, and further, the contract between appellant and appellee fixed no time for the procuring of said right of way, and, therefore, the complaint failed to state an actionable breach.

We cannot agree with appellant in its contentions as

above stated. Appellant makes no contention as to the validity of the contract, out of which the present controversy arose. It was entered into by the proper officials of the state, after the proper preliminary proceedings had been taken, and constituted a valid and binding obligation on the part of the state. It seems to be well settled that the state, in all its contracts and dealings, must be adjudged and abide by the rules which govern in determining the rights of private citizens contracting and dealing with each other. There is not one law for the state and another for its subjects. When the state engages in business and business enterprises, and enters into contracts with individuals, the rights and obligations of the contracting parties must be adjusted upon the same principles as if both contracting parties were private persons. Both stand upon equality before the law. *Carr* v. *State* (1891), 127 Ind. 204, 26 N. E. 778, 11 L. R. A. 370, 22 Am. St. 624; *Chapman* v. *State* (1894), 104 Cal. 690, 38 Pac. 457, 43 Am. St. 158; *Murray* v. *Charleston* (1877), 96 U. S. 432, 24 L. Ed. 760. In the last cited case Justice Strong used this language: "The truth is, states and cities, when they borrow money, are not acting as sovereignties. They come down to the level of ordinary individuals. Their contracts have the same meaning as that of similar contracts between private persons." In *Carr* v. *State, supra,* Judge Elliott, speaking for the court, said: "Its (the state) contracts are interpreted as the contracts of individuals are, and the law which measures individual rights and responsibilities measures, with few exceptions, those of a state whenever it enters into an ordinary business contract." *Gray* v. *State* (1880), 72 Ind. 567; *State, ex rel.,* v. *Ralston* (1914), 182 Ind. 150, 105 N. E. 54; *City of Indianapolis* v. *Indianapolis Water Co.* (1916), 185 Ind. 277, 113 N. E. 369; *Grogan* v. *City of San Francisco* (1861),

18 Cal. 590; *People* v. *Stephens* (1878), 71 N. Y. 527; *Schunnemunk Construction Co.* v. *State* (1918), 116 Misc. Rep. 770, 189 N. Y. Supp. 569; *Caster* v. *Mayor, etc.* (1871), 43 N. Y. 399; *Hartman* v. *Greenhow* (1880), 102 U. S. 672, 26 L. Ed. 271; 36 Cyc. 880-881. It, therefore, seems, by the decided weight of authority, that the contract in the instant case should be considered as though it was between individuals.

Looking at this contract in the light of the decisions referred to, it occurs to us that the plainest principles of justice require the implication of a covenant on the part of the state to provide a right of way so as to enable the appellee to prosecute his work to the utmost advantage and economy. Any other construction would destroy the mutuality of the agreement, and put it practically in the power of the state to defeat performance by the contractor. It is true that the contract does not expressly state that appellant shall furnish the right of way, nor does it fix any definite time when the same should be acquired; but the clearest implication arises from the language of the agreement and its avowed object and interest that the right of way over which the proposed highway was to be constructed should be secured by the state. This position is further fortified by the provisions of the state highway law, which provides and lays down the method and procedure by which the state can secure such a right of way. Acts 1919, p. 119, §24. In the case of *Schunnemunk Construction Co.* v. *State, supra,* which was an action by the construction company against the State of New York to recover damages occasioned by the failure of the state to secure the right of way, the contractor was interrupted in its construction work because the state had failed to secure a part of the right of way, and, by reason thereof, much of the contractor's plant and many of its employees were

rendered idle, the period of construction prolonged, and serious loss was inflicted upon it. The court, in its opinion, stated: "The issue is whether the state has violated the contract by interfering with and interrupting the claimant in its performance of its obligation. Such interference between individuals or corporations confers a right of action." We quote further from the same case: "If an individual in good faith believed that he was the owner of land and contracted with a builder for the construction of a house upon it, and during the progress of the work discovered that he had no title, and interrupted the performance by his builder of the erection of the structure, he would be liable for the damage caused. . . . The situation is no different here." This case seems to place the state, where it is a party to a business contract, on the same plane as an individual, which is in harmony with the law in this state as expressed in the case of *Carr* v. *State, supra. Brennan Construction Co.* v. *State* (1921), 117 Misc. Rep. 770, 191 N. Y. Supp. 253; *Schunnemunk Construction Co.* v. *State, supra; Carr* v. *State, supra; Caster* v. *Mayor, etc., supra; City of Indianapolis* v. *Indianapolis Water Co., supra; Hartman* v. *Greenhow, supra; Grogan* v. *City of San Francisco, supra; Chapman* v. *State, supra; Mansfield* v. *New York, etc., R. Co.* (1886), 102 N. Y. 205, 6 N. E. 386.

It would seem from appellant's brief that, had the contract been between private citizens, it would concede that the complaint contained sufficient facts to constitute a cause of action for breach of contract, but it contends that, as the state is a party to this contract, the complaint does not state a cause of action for the reason that, "neither the law nor the contract makes the state liable for the failure of the officers of the State Highway Commission to procure right of way or for the mistakes of its employees under the facts pleaded"

(Appellant's Brief, Point 1, page 214), and in support of this proposition cites the cases of *Newman* v. *Sylvester* (1873), 42 Ind. 106; *Coonan* v. *City of Cape Girardeau* (1910), 149 Mo. App. 609, 129 S. W. 745; *Strousser* v. *City of Ft. Wayne* (1884), 100 Ind. 443; *Hord* v. *State* (1907), 167 Ind. 622, 79 N. E. 916. The first case cited was an action by appellee against appellant, who was a member of the common council of the city of Indianapolis, to hold him personally liable on a contract for the improvement of a part of Market Street. Appellant was the successful bidder and obtained the contract. After the contract was completed, appellant was unable to collect the contract price from the property owners, for the reason that the part of West Market Street improved was not within the city limits. Appellant then sought to hold appellee personally responsible for the contract price. It was held that there was no personal liability on the part of appellee as a member of the common council of Indianapolis, as there was no fraud and no withholding of any information which was available to the contractor as well as to the members of the common council.

In *Strousser* v. *City of Ft. Wayne, supra,* the common council of the city passed a resolution for the annexation of contiguous territory, but the lots attempted to be annexed were not plotted and appellant property owner did not consent to the annexation. The city thereafter levied and collected taxes on the property of appellant so annexed, and he brought suit to recover the taxes paid. Judge Elliott, who wrote the opinion in *Carr* v. *State, supra,* discusses the position of municipal officers in such a case as is presented by the facts in this case, and also the doctrine of estoppel, but this case is so different from the case at bar, in that there was no contractual relations between the appellant and the city, that we do not consider the case as authority

for the proposition stated by appellant in this case. There is nothing in the Strousser case that in anywise conflicts with the law as stated in the Carr case.

In *Hord* v. *State, supra,* appellant sought to recover for services rendered the state by virtue of a contract with the Attorney-General. This case turned upon the validity or invalidity of the contract as to whether the Attorney-General had the authority to make the contract upon which appellant sought to recover for his services. In the present case no such question is presented.

The case of *Coonan* v. *City of Cape Girardeau, supra,* was to recover $1,000, which plaintiff had deposited with the defendant city as a guaranty that he would enter into a contract with said city for the construction of a sewer if said contract was awarded to him as the lowest bidder and post bond in one-third of the amount of the bid. The contract was awarded plaintiff on his bid, but he refused to enter into the construction contract for the reason that he had discovered the city had not secured the right of way over and through certain lots owned by private citizens, through which the sewer was to be constructed, and that he would be delayed in the construction of said sewer to his loss. The court, in deciding the rights of the parties to said $1,000, used the following language: "No doubt it was the duty of the city either to obtain a right of way across those lots by purchase or condemnation; or, if it could not do that, change the route of the sewers as the plans and specifications on which plaintiff bid allowed. In other words, it was the duty of the city to furnish plaintiff a right of way along which he might construct the sewers." The court refused to permit plaintiff to recover on the principle of law stated thus, "the law does not relieve a man from a contractual obligation because he believes

"with good cause the person with whom he has contracted will not be able to perform."

We think the above cases show, without further discussion, that the cases cited by appellant do not support his objection to the sufficiency of the complaint.

Appellant also contends that the complaint is insufficient because the appellee accepted the terms of the contract, performed the work and accepted payment, and is, therefore, precluded from recovering further claims against the state as a matter of law and of contract. This might be true if appellee were seeking to recover for work done under the contract, but, in this case, he is seeking to recover damages for a breach of the contract, which he is not precluded from doing because he accepted the consideration agreed upon. in the contract should be paid him for the construction of the highway. Donnelly, Law of Public Contracts, §283, pp. 400, 401; *Chickasha* v. *Hollingsworth* (1916), 56 Okla. 341, 155 Pac. 859, 9 C. J. 793; *Weeks* v. *Trinity Church* (1900), 56 App. Div. 195, 67 N. Y. Supp. 670.

Appellant further contends that the contract provides for extension of time, and that this provision of the contract is appellee's only remedy. This might be true if the delay were caused without the fault of either party, but it certainly would not be true where the delay was caused by the public body without right. See Donnelly, Law of Public Contracts, §284, pp. 284, 285; *United States* v. *United Engineering, etc., Co.* (1914), 234 U. S. 236, 34 Sup. Ct. 843, 58 L. Ed. 1294; *Selden Breck Construction Co.* v. *Regents of University of Michigan* (1921), 274 Fed. 982. In the last case cited appellant's position was urged, and the court held that the "extension of time provision" was intended to be an allowance to the plaintiff and not a limitation. We quote from this case: "The correct rule is that

upon breach of a building contract by the failure of the owner to perform his obligations under such contract, which delays the contractor in completing his work thereunder, the latter is not obliged to abandon such work, but may elect to continue therewith after such breach and, upon performance of the contract on his part, is entitled to recover the damages sustained by him as a result of the delay caused by such owner."

Appellant very seriously contends that §24, Acts 1919, p. 119, §8268 *et seq.* Burns 1926, being the State Highway Act, provides for the procuring of right of way for highways of the "state system," and the duties there imposed involve not only the acts of the highway commission but also officials not connected with the commission. The statute provides that, in case of failure to agree, a resolution shall be passed by the commission and referred to the Attorney-General, whereupon the latter shall file proceedings in eminent domain, and that this provision brings into play the Attorney-General and the courts in the exercise of a governmental function; also, as the commission could not control the Attorney-General or the courts as to the time for action in the proceedings, there could be no breach of contract. It seems to us that counsel for appellant becomes confused upon this point of its case, and forgets that the *state* is the contracting party and not the highway commission; that the commission and the Attorney-General are the agents through whom the state acts, and that the provisions of the above-mentioned statutes provide the method and machinery through and by which the state is enabled to perform the duty imposed upon it by the contract, namely, to secure the right of way upon which the contractor could construct the proposed highway. We could not say that the activities of government officials such as are here involved, when assisting the state in performing a duty

imposed upon the state by an ordinary business contract, would be such as to bring appellant within the rule which precludes recovery on the ground that it was engaged in the performance of a governmental function. We must keep in mind that, whatever the highway commission did by way of accepting donations of land or the purchase of land from the owner, or the action of the Attorney-General in filing suits in court under the power of eminent domain to obtain a right of way, or any other action taken by the proper officer or officers of the state as set out in the Highway Commission Act, it is the state acting in performing a duty imposed upon it by the provision of its contract by the terms of which it was bound to do. Appellant, in support of its contention, cites *Wilson* v. *United States* (1875), 11 Ct. Cl. 513; *Horowitz* v. *United States* (1925), 267 U. S. 459, 45 Sup. Ct. 344, 69 L. Ed. 736. The first case was a suit by appellant to recover damages for breach of contract. In 1864 appellant agreed with the Quartermaster-General to deliver a large number of mules in the city of Washington. He endeavored to perform according to his contract, but when the mules, which he had brought from Kentucky, reached the confines of the city the capture of Washington by the southern forces was imminent. The agents of the contractor sought to enter the city and deliver the mules, but were stopped at the picket line and turned back under an order of the military governor of Washington forbidding all persons to approach the defenses or enter the camps. The agents notified the picket guard that the mules were for military service of the United States, and that they were to be delivered under contract, that the enemy's cavalry was approaching, that they demanded leave to send one of their number to the Quartermaster-General and secure an order for their admission. The request was refused and the mules

were captured. The court quotes from other cases to the effect that the United States as a contractor cannot be held liable for the public acts of the United States as a sovereign, and that whatever acts the government may do, be they legislative or executive, so long as they are public and general, cannot be deemed specially to alter, modify, obstruct or violate the particular contract into which it enters with individuals. The other case cited by appellant involves the same principle, and we cannot see how the rules as announced in these cases are applicable or controlling in this case.

Appellant urges in his brief that the court erred in holding that the state is responsible for the mistakes of an engineer on the project. This point is urged to that part of the complaint which seeks to recover for the extra fill which was occasioned by the alleged mistake of the engineer in charge. The stakes were fixed by the engineer, and appellee made the fill seven inches in excess of the proper depth, and, after the fill was made, the engineer discovered his mistake and appellee was required to and did remove said extra fill. Also, at another point, the appellee alleges that he was delayed two-thirds of a day on account of a mistake of the engineer in charge to set the stakes at the proper place. Appellant made no motion to strike out the parts of the complaint above referred to and of which it now complains, nor did he object to the evidence when offered to prove the above allegations. As the amount of the judgment obtained was less than appellee claimed was due him on account of the failure of appellant in securing the right of way, we cannot say that these items entered into and became a part of the judgment. Appellee's total demand for damages was $21,054.13, while the total damages recovered was $13,995. The items that were not allowed do not appear. As the question as to whether or not

454

the state would be liable for such mistakes of its engineer in an action for breach of contract as appears in this proceeding is not properly presented, we, therefore, express no opinion upon that point.

We, therefore, conclude that the court did not err in overruling appellant's demurrer to the complaint or in sustaining appellee's demurrer to appellant's second, third, and fourth paragraphs of answer.

We have examined appellant's objections to certain evidence, which objections were in the main based upon appellant's theory as above discussed, and we find no error in the court's rulings upon the admissions of evidence that would justify a reversal of this case.

Judgment affirmed.

Martin, C. J., concurs in the decision that the judgment was properly rendered in favor of the appellee, but believes the judgment should have been rendered against the Indiana State Highway Commission for the reason that this judgment clearly should be paid out of the state highway fund.