## UNITED STATES *v.* UNITED ENGINEERING AND CONTRACTING COMPANY.

### APPEAL FROM THE COURT OF CLAIMS.

No. 381.    Submitted May 8, 1914.—Decided June 8, 1914.

While reasonable contracts for liquidated damages for delay are not to be regarded as penalties and may be enforced between the parties, *Sun Printing Ass'n* v. *Moore,* 183 U. S. 642, one party must not prevent the other party from completing the work in time, and if such is the case, even if the subsequent delay is the fault of the latter, the original contract cannot be insisted upon and the liquidated damages are waived.

Where the original contract for government work provided for liquidated damages for delay beyond a specified date but supplemental contracts contained no fixed rule for the time of completion, the Government is limited in its recovery to the actual damages sustained by reason of the delay for which the contractor was responsible.

It is the English rule, as well as the rule in some of the States, that where both parties are responsible for delays beyond the fixed date, the obligation for liquidated damages is annulled; and, unless there was a provision substituting a new date, the recovery for subsequent delay is limited to the actual loss sustained.

Where the Government has by its own fault prevented performance of the contract and thereby waived the stipulation as to liquidated damages, it cannot insist upon it as a rule of damages because it may be impracticable to prove actual damages.

47 Ct. Cl. 489, affirmed.

THE facts, which involve the construction of a contract for Government work and the rights and obligations of

the Government and the contractor thereunder, are stated in the opinion.

*Mr. Assistant Attorney General Thompson* and *Mr. P. M. Ashford* for the United States.

*Mr. Frederic D. McKenney, Mr. John S. Flannery* and *Mr. William Hitz* for appellee.

MR. JUSTICE DAY delivered the opinion of the court.

Suit was brought in the Court of Claims by the United Engineering and Contracting Company to recover of the United States upon a contract, dated the fifteenth of September 1900, for the construction within seven calendar months from the date of the contract, namely by April 15, 1901, of a pumping plant for Dry Dock No. 3 at the New York Navy Yard, the work to be done in accordance with certain plans and specifications annexed to and forming a part of the contract. The claimant recovered a judgment (47 Ct. Cl. 489), and the United States brings this appeal.

The principal question in the case involves the correctness of that part of the judgment of the Court of Claims which permitted the claimant to recover $6,000, which the Government had deducted as liquidated damages for 240 days' delay in the completion of the work, at the rate of $25 per day. To understand this question the terms of the contract and certain facts found by the Court of Claims, upon which the case is to be considered here, must be had in view.

The claimant commenced the construction of the work in accordance with the contract, and after a portion thereof had been done the Navy Department concluded to connect Dry Dock No. 2 with Dry Dock No. 3 and to build a single pumping plant for both docks. To that end on July 21,

1901, a supplemental contract was entered into with the United States, whereby the claimant agreed, for an additional sum, to furnish all the material and labor necessary to carry out the changes in and additions to the plant originally contracted for and to complete the work on or before October 15, 1901, to which date the original contract was extended.

While the work was progressing under the original and supplemental contracts, a controversy arose between the claimant and the civil engineer in charge as to the proper method of designing and constructing the floor of the pump well and as to the correct interpretation of the requirements of the specifications concerning other matters, which resulted in considerable delay and the cessation of work without the fault of the claimant. On January 13, 1903, the chief of the Bureau of Yards and Docks appointed a board to consider changes in the bottom of the pump well and the compensation to be paid therefor, of which the claimant was advised by letter and it was informed that it would be expected to immediately resume work under its contract and push the same to completion with utmost dispatch, otherwise the Bureau would annul the contract and take over the entire work. The claimant thereupon promised to push the work to completion as rapidly as possible, with which promise the Bureau appears to have been satisfied.

On February 15, 1903, after the date fixed for the completion of the work under the original and supplemental contracts, a second supplemental contract was entered into, whereby the claimant agreed to construct three hatches in the roof of the pump well for additional compensation. Nothing was said in this contract as to the time of completion or as to delays under prior contracts.

The board of officers appointed to consider the design of the floor of the pump well and other matters in controversy reported February 16, 1903, that there were, as

conceded by the Bureau, errors in the design of the pump well floor; that the work done and materials furnished by the claimant complied with the specifications, and that it was not chargeable with improper work or procedure, and the board estimated the increased compensation for the new work and made certain allowances to the claimant. On March 7, 1903, a third supplemental contract was entered into, which embodied the changes found necessary in the original plan for the construction of the floor of the pump well and the increased compensation to claimant therefor. Nothing was said in this contract as to the date of the completion of the work theretofore contracted for, nor as to prior delays.

The claimant proceeded under the contracts with reasonable dispatch and without delay on its part until May 1, 1903, when the work was ready for the installation of the machinery. Up to this date the claimant was delayed by the Government in making changes and alterations in the work and in the use of the docks for docking vessels while the work was going forward. No delays were chargeable to the claimant up to October 15, 1901, the time fixed for the completion of the work, nor thereafter to May 1, 1903. During this period, due to the delays of the Government, the claimant incurred additional expenses for superintendence and maintenance. During the period from May 1, 1903, to April 21, 1904, the work was delayed by the claimant's subcontractors in not getting the pump castings in place, for which the Government was not responsible. The claimant was also delayed for a few days during said period by the Government while using the docks for docking vessels.

At the request of the Bureau a civil engineer made a review of the matter of delays and in February, 1905, reported that, notwithstanding the increased work required by the supplemental agreements and the restrictions placed upon the work, the claimant was up to time

on its contracts to May 1, 1903, but that subsequent to that date and up to April 21, 1904, it had taken seven calendar months more time than was necessary. After the plant was completed a board was appointed to pass upon it, which recommended certain deductions from the contract price for failure to strictly comply with the specifications. On March 24, 1905, the civil engineer in charge transmitted to the claimant a supplemental agreement covering the deductions, which agreement contained a reservation that nothing therein and no action taken under it should affect the rights of either party in the matter of delay and the completion of the work or otherwise except as specifically stated, which supplemental agreement claimant refused to execute. In February, 1906, long after the plant had been accepted, the Bureau held the claimant responsible for 240 days' delay, and deducted as liquidated damages for the delay the sum of $25 per day, or $6,000, from the balance due under the contract, which the claimant accepted under protest, and it subsequently filed with the Bureau a written protest against the deductions for delays and disallowances. The work was completed and accepted finally by the Government on April 5, 1905.

Notwithstanding the delays of the Government, the Court of Claims found that the claimant with reasonable diligence could have completed the plant for tests during the period by about September 21, 1903, and found that if it was chargeable for the delay according to the liquidated damage clause of paragraph 12 of the specifications of $25 per day, the deduction would be $750 less than the Government had deducted. But it found that, if the claimant was only liable for actual damages, and it did so determine, since there was no evidence as to such damages, the claimant was entitled to recover the entire amount deducted.

In the original contract the specifications provided,

paragraph 12, for liquidated damages for delay, as follows:

"12. Damages for delay.—In case the work is not completed within the time specified in the contract, or the time allowed by the Chief of the Bureau of Yards and Docks under paragraph 11 of this specification, it is distinctly understood and agreed that deductions at the rate of $25 per day shall be made from the contract price for each and every calendar day after and exclusive of the date within which completion was required up to and including the date of completion and acceptance of the work, said sum being specifically agreed upon as the measure of damage to the United States by reason of delay in the completion of the work; and the contractor shall agree and consent that the contract price, reduced by the aggregate of damages so deducted, shall be accepted in full satisfaction for all work done under the contract."

Under the provisions of this paragraph, if there had been nothing subsequently changing the rights of the parties, and the delay had resulted from the failure of the claimant to complete the work within the time specified, the deduction at the rate of $25 per day might have been made by the United States as liquidated damages. This was the sum estimated and agreed upon between the parties as the damages which might be regarded as sustained by the Government in event of the breach of the claimant's obligation to complete the work within the stipulated time. Such contracts for liquidated damages when reasonable in their character are not to be regarded as penalties and may be enforced between the parties. See *Sun Printing & Publishing Ass'n* v. *Moore*, 183 U. S. 642, in which the matter is fully discussed.

The precise question here is whether, when the work was delayed solely because of the Government's fault beyond the time fixed for its completion and afterwards the work was completed without any definite time being fixed in

which it was to be done, the claimant can be charged for the subsequent delays for which he was at fault by the rule of the original contract stipulating liquidated damages, or was that stipulation waived by the conduct of the Government and was it obligatory upon it in order to recover for the subsequent delays to show the actual damages sustained? We think the better rule is that when the contractor has agreed to do a piece of work within a given time and the parties have stipulated a fixed sum as liquidated damages not wholly disproportionate to the loss for each day's delay, in order to enforce such payment the other party must not prevent the performance of the contract within the stipulated time, and that where such is the case, and thereafter the work is completed, though delayed by the fault of the contractor, the rule of the original contract cannot be insisted upon, and liquidated damages measured thereby are waived. Under the original and first supplemental agreements, the claimant knew definitely that he was required to complete the work by a fixed date. Presumably the claimant had made its arrangements for completion within the time named. Certainly the other contracting party ought not to be permitted to insist upon liquidated damages when it is responsible for the failure to complete by the stipulated date, to do this would permit it to recover damages for delay caused by its own conduct.

It may be that damages were sustained by the failure to carry out the subsequent agreement. But the Government, as well as the claimant, saw fit to go on with the work with no fixed rule for the time of its completion, so that it be reasonable, and the Government required no stipulation in the second and third supplemental contracts as to damages in a fixed and definite sum for failure to complete the work as required. Under such circumstances we think it must be content to recover such damages as it is able to prove were actually suffered.

This conclusion is in accord with the rule of the English cases. In *Dodd* v. *Churton*, L. R., 1 Q. B. 1897, 562, 568, Chitty, L. J., said:

"The law on the subject is well settled. The case of *Holme* v. *Guppy*, (3 M. & W. 387), and the subsequent cases in which that decision has been followed are merely examples of the well known principle stated in Comyns' Digest, Condition L (6), that, where performance of a condition has been rendered impossible by the act of the grantee himself, the grantor is exonerated from performance of it. The law on the subject was very neatly put by Byles, J., in *Russell* v. *Bandeira*, (13 C. B. (N. S.) 149.). This principle is applicable not to building contracts only, but to all contracts. If a man agrees to do something by a particular day or in default to pay a sum of money as liquidated damages, the other party to the contract must not do anything to prevent him from doing the thing contracted for within the specified time."

The same rule was followed with approval by the New York Court of Appeals in a well considered case, *Mosler Safe Co.* v. *Maiden Lane S. D. Co.*, 199 N. Y. 479, in which it was held that, even where both parties are responsible for the delays beyond the fixed time, the obligation for liquidated damages is annulled, and in the absence of a provision substituting another date it cannot be revived, and the recovery for subsequent delays must be for actual loss proved to have been sustained.

This principle is applicable here, the conduct of the Government's agents had caused the delays up to May 1, 1903, and the subsequent delays though chargeable to the claimant would only give rise to a claim for damages measured by the actual loss sustained. *Mosler Safe Co.* v. *Maiden Lane S. D. Co.*, *supra*. We think the application of this rule is not changed by the difficulty suggested that it might be impracticable to prove actual damages. This fact, if such it be, would not permit the Government

by its own fault to prevent the performance of the contract and to do that which amounts to a waiver of the stipulation and then insist upon it as a rule of damages. We think the Court of Claims was right upon this principal branch of the case.

There are certain minor assignments of error to the conclusions and judgment of the Court of Claims. The Government was held responsible for the extra cost of enclosing certain machinery in casing necessitated by its building a plank walk across the top of the pipe in the pumping plant to protect its workmen from high speed gearing. The Court of Claims found that this expense was made necessary by the Government and allowed for it. We find no error in this. Also, as to the assignment of error to the judgment of the Court of Claims under Finding XI, awarding damages for repairs made necessary by the breakage of certain pipes caused by sudden increase in the pressure in the salt and fresh water systems in the Navy Yard, the Court of Claims found that these breaks were caused by the Government without notice to the claimant and without its fault. We find no error in the judgment of the Court of Claims awarding damages under this finding.

It follows that the judgment of the Court of Claims is

*Affirmed.*