BaRNey, Judge,
reviewing the facts found to be established, delivered the opinion of the court:
This suit arises out of a contract between plaintiff and the Government Reclamation Service. This contract was made February 15, 1907, and was for the construction of a diversion dam and head work on the North Platte project in Nebraska, a copy of the same being attached to and made a part of the petition herein. According to its terms the performance of the contract Avas to be completed April 1, 1908. Not long before the expiration of this time the plaintiff made strenuous application for an extension of this contract period, claiming that it had been delayed in its performance of the contract by the Government. The Government denied this delay on its part but finally concluded (as stated in the correspondence on this subject) to give the plaintiff the “benefit of the doubt,” and granted 10 days additional time in which to perform its contract. The plaintiff failed to perform the contract within the time provided for in the contract, including such extension of 10 days, and thereafter as long as the plaintiff continued work the Government refused to pay plaintiff the amount earned under paragraph 43 of the specifications except upon the deduction of the liquidated damages of $100 per day provided by paragraph 42 of the specifications. In consequence of this action on the part of the Government the plaintiff declined to proceed with the work under the contract and stopped such work May 29, 1908. On July 24, 1908, the Secretary of the Interior notified the plaintiff that if it did not resume work by August 15, 1908, the contract would be suspended under paragraph 22 of the specifications. Plaintiff did not resume work in accordance with this notice, and having refused to do so unless further deductions were not made for liquidated damages the Secretary of the Interior *544 notified the plaintiff that the contract was suspended and the work taken over by the Government; and it thereafter took possession of plaintiff’s plant and completed the work March 31, 1909.
In making up its final account with the plaintiff the Government charged it $100 per day for liquidated damages from April 11 to August 18, 1908, giving it credit for retained percentages under paragraph 43 of the specifications, thereby leaving it indebted to plaintiff in the sum of $2,713.64, which the plaintiff refused to accept.
The first question to be considered by the court is whether the Government had the right under the contract to charge the plaintiff with the $100 per day liquidated damages therein provided for after April 11, 1908, when the contract period, including the 10 days’ extension, expired. The answer to this question involves the right of the plaintiff to abandon work under the contract. If the Government had no right to withhold that sum from the monthly payments due under paragraph 43 of the specifications, we think the plaintiff had the right to abandon the work. Canal Co. v. Gordon, 6 Wall., 561; Pigeon v. United States, 27 C. Cls., 167. Otherwise it was not justified in doing so. Upon the decision of this question practically depends all of the issues in this case.
It is contended by the plaintiff that by the extension of the time for the performance of the contract by the Government owing to its delay the liquidated damages provided in the contract were thereby waived, and cites United States v. United Eng. & Con. Co., 234 U. S., 236, and Ittner v. United States, 43 C. Cls., 336, in support of that contention. This is a very important question which this court must decide when properly presented but will refrain from doing so before that time, and we do not think it is necessary in this case. Whatever may be the general rule upon that subject the parties to a contract certainly have the right to change it by proper provisions, and we think that has been done in the instant case. The following are the provisions of the specifications on that subject:
“ 21. Delays. — The contractor shall not be entitled to any compensation for delays or hindrances to the work, except *545 that if, in the judgment of the engineer, direct and unavoidable extra cost to the contractor of any part of the work, covered by these specifications is caused by the failure of the United States to provide right of way or material, then upon the presentation of a written claim by the contractor, not later than 30 days after the close of the month during which such extra cost is claimed to have been incurred, such claim, if found correct by the engineer, will be approved. Extension of time will be allowed for unavoidable delays that may result from unforeseen causes that, in the opinion of the egnineer, approved by the Secretary of the Interior, are undoubtedly beyond the control of the contractor. If the Avork be delayed by specific orders to stop work given by the Secretary of the Interior or by the engineer, or if any delay or hindrance be caused by their failure to provide’ material sufficient to carry on the work, or to provide necessary right of way, then such delay will entitle the contractor to an extension of time equivalent to the time lost in such delay, provided the contractor shall have submitted to the engineer written claim within 30 days from the cause thereof. Any extension of time, however, shall not release the sureties from their obligations, which shall remain in full force and effect until the discharge of the contract. Any application for an extension of time must be accompanied by the formal consent of the sureties thereto, or other sufficient sureties must be furnished by the contractor. Should the contractor fail to complete the work in the time agreed upon in the contract, or in such extra time as may have been allowed for delays as herein provided, the engineer will compute and appraise the direct damages for the loss sustained by the United States on account of further employment of engineers, inspectors, and other employes, including all disbursements on the engineering account, properly chargeable to the work. íhe amount so appraised and computed is hereby agreed upon as the damages for the delay, and will be deducted from ahy money due the contractor under his contract, añd the contractor and sureties shall be liable for any excess. The decision of the chief engineer as to the appraisal of such damages shall be final and binding on both parties. Any provisions in the detail specifications concerning deduction for delay shall be held as modifying or revoking the provisions of this paragraph.
“42. Deduction for failure to complete. — If the several parts of the work are not completed within the time agreed upon there will be deducted from any sum otherwise due under the contract the following amounts for each and every *546 day occupied in excess of the time agreed upon, viz, for the work included under schedule 1, $50 per day; for the work included under schedule 2, $50 per day. This deduction will be in lieu of that provided for in paragraph 21, and is agreed upon as liquidated damages for the loss to the United States on account of engineering, superintendence, and value of operation of the irrigation works dependent thereon.”
These two paragraphs must be read and construed together and both of them given effect as far as possible, as that is elementary in the construction of contracts. Paragraph 42 modifies paragraph 21 only to the extent of agreeing upon a sum for damages in case of delay in performance of the contract or, as it is called, agreeing upon liquidated damages. With that exception paragraph 21 gives us the provision relating to delays. The last sentence of paragraph 21 provides that “ any provisions in the detail specifications concerning deduction for delay shall be held as modifying or revoking the provisions of this paragraph.” This provision is given full effect by modifying this paragraph in the manner stated.
It is therein provided in express terms for an extension of the contract period if the work be delayed by the failure of the Government “ to provide materials sufficient to carry on the work,” such extension to be “ equivalent to the time lost in such delay.” Then follows the provision, “ should the contractor fail to.complete the work in the time agreed upon in the contract or in such extra time as may have ieen allowed for delays as herein provided ” (italics ours), with a further provision as to damages arising from such delay and how they are to be appraised. Paragraph 42, which substitutes agreed for actual damages, says that such damages shall be assessed 'if the work is not “ completed within the time agreed upon,” which, of course, relates back to paragraph 21.
If our construction of these two paragraphs is correct, then the time for the performance of the contract in question expired April 11, 1908, and thereafter and until the Government took possession of the work the plaintiff became liable for a deduction from any sums which might otherwise be due it of $100 per day as liquidated damages. This, of course, assuming that the authorities refusing to grant further extension of time were not guilty of bad faith or *547 such gross negligence or ignorance as to imply bad faith in such refusal. Upon this subject it is sufficient to say that the-findings show that such extension pf time for the completion of the performance of the contract was equivalent to the delay caused by the Government.
Paragraph 22 of the specifications contains the following provision:
“ In the determination of the question whether there has been such noncompliance with the contract as to warrant the suspension thereof the decision of the Secretary of the Interior shall be binding on both parties.”
This, of course, involves all questions of delay decided by the Secretary of the Interior. It follows as a corollary from this that the plaintiff was not justified in stopping work because of such deduction, and the Government was justified in taking over the work and completing it at the expense of the plaintiff.
This brings us to the question of proper charges against the plaintiff for such completion of the project and as to how long such deduction of liquidated damages should continue after the completion of the contract period, including the 10 clays extension. The Government contends that such charge should be made for every day from April 11, 1908, when the contract period expired, to March 31,1909, the date of the completion of the work by the Government, and files a counterclaim for that amount. In the final account stated between the parties the Government charged liquidated damages up to the time of the suspension of the contract, but after-wards filed a cross petition in which it claims additional liquidated damages up to March 31, 1909.
The Government concedes that if the contract had been canceled or annulled that thereafter liquidated damages for delay could not be enforced, but argues that such is not the rule when the contract is only suspended, and that in the latter case they continue until the contract is fully performed. We see no force in this contention and can not understand how a party can be said to be liable for delay when he is prevented from performing either by the annulment of the contract or the suspension of the work there *548 under. His relation to the work is the same in either case. Doubtless a contract might provide for the liquidated damages to continue after its annulment or suspension until the owner should have a reasonable time to complete his performance. It is needless to say that this contract contains no such provision. The plaintiff was properly charged with the agreed liquidated damages from April 11 to August 19, 1908, and in addition thereto the costs incurred by the Government in completing the work as provided in paragraph 22 of the specifications, and no more.
In making up its account with the plaintiff for its expenses in the completion of the work after its suspension it charges the plaintiff with “ temporary dam and extra work,” “ repairs to temporary dam,” “ repairs to temporary headworks,” and “amount of extra fill required,” in all amounting to $18,562.03. This is submitted without any proof as to its necessity in the completion of the work under the contract and without being itemized except in the most general manner. This account thus submitted shows a balance due the plaintiff of $2,718.64.
This charge is presented as an affirmative defense to the plaintiff’s claim .and we think should at least be so fully itemized as to inform the plaintiff as to all of its details so that proper objections could be made to such charges as the plaintiff might deem were improper. In the absence of any such statement or proof we do not think this charge should be' allowed against the plaintiff.
It should be here observed that in its original petition filed in this case November 12,1913, the plaintiff made no mention of this charge of $18,562.03 as being wrongful, but July 4, 1917, filed an amended petition wherein it is averred that such sum is not a proper charge and that said charge is made to cover actual damages arising from the plaintiff’s delay in addition to the cost of the completion of the work and the liquidated damages provided for in the contract. On December 4, 1917, the defendant filed a motion to strike from the amended petition the paragraph containing such averment or in the alternative to order it to be made more definite and certain. This motion was ordered to be heard at the trial on the merits.
*549 We do not think under the liberal practice in this court as to pleadings it was necessary for the plaintiff to have made any such amendment to its petition to enable it to raise the question of the impropriety of this charge upon the trial. It was the duty of the Government to properly present this item of its defense in the first instance and it was benefited rather than injured by being informed by this amendment that objection would be made to it and upon what grounds such objection would be made. If the Government had needed further time to meet these objections by explanatory evidence it certainly would have been granted, and therefore the motion is overruled.
It follows from the foregoing that the plaintiff is entitled to a judgment in the sum of $2,713.64 plus the item of $18,562.03, herein discussed, making in all the sum of $21,275.67.