## AMERICAN ENGINEERING CO. v. UNITED STATES.

### No. 19074.

District Court, E. D. Pennsylvania.

May 20, 1938.

George B. Clothier, G. Ruhland Rebmann, Jr., and Edmonds, Obermayer & Rebmann, all of Philadelphia, Pa., for plaintiff.

Edward A. Kallick, Asst. U. S. Atty., of Philadelphia, Pa., J. Cullen Ganey, U. S. Atty., of Bethlehem, Pa., Tom DeWolfe, Sp. Asst. to Atty. Gen., and J. H. Reddy, Sp. Atty., Dept. of Justice, of Washington, D. C., for the United States.

Before KIRKPATRICK, District Judge.

The plaintiff, after nearly a year's delay, finally completed its contract with the government to furnish equipment and machinery for handling boats and seaplanes, for four cruisers. The price was $104,593. From its payments, the government withheld 10% or $10,459.30, as damages for delay in delivery, under a clause of the contract which liquidated the damages at 1/10 of one per cent. of the price for each day's delay, with a limit of 100 days. The plaintiff waived $459.30 of its claim and brought this suit under the Tucker Act, 28 U.S.C.A. § 41(20), to recover $10,000.

The undisputed dates bearing upon the question of delay are as follows: The plaintiff, on July 1, 1932, was notified of the award of the contract, and on July 6 executed it. It provided for delivery on September 1, 1932, of the greater part of the equipment intended for the two cruisers under construction in the east coast navy yards, and the balance on September 15; for the two on the west coast on October 1 and October 15. The plaintiff did not begin to manufacture any of the equipment until after September 20, and final delivery of equipment was not made until July 31, 1933, on the east coast, and August 2, 1933, on the west coast.

The proper apportionment between the plaintiff and the government of the responsibility for this long delay was (and still is) the only matter of fact in dispute between the parties. Whether or not the issue has been foreclosed by a decision by the Secretary of the Navy, to whom it was submitted, is the principal question of law in the case.

The general provisions contract contained the following clause: "Article 12. Disputes.—Except as otherwise specifically provided in this contract, all disputes concerning questions of fact arising under this contract shall be decided by the contracting officer or his duly authorized representative, subject to written appeal by the contractor within thirty days to the head of the department concerned, whose decision shall be final and conclusive upon the parties hereto as to such questions of fact. In the meantime the contractor shall diligently proceed with performance."

This provision was valid and binding upon the parties. United States v. Gleason, 175 U.S. 588, 20 S.Ct. 228, 44 L.Ed. 284. The liquidated damage clause of the specifications also contains a provision for submission of disputes to the head of the department concerned. It is not essentially different from the clause quoted, but requires notice by the contractor within ten days from the beginning of any delay from which he claims relief. This notice was never given and, it may be assumed (though it really makes no great difference) that whatever was done in respect of a submission of disputes, was under Article 12.

In May, 1933, the government made its first deduction for liquidated damages, and the plaintiff protested, stating that the delays had been entirely due to failure of the Bureau of Construction and Repairs to act with reasonable promptness in approving plans submitted, and referring to "our claim of error for this deduction." Correspondence ensued and on January 13, 1934, the plaintiff was advised by the Paymaster General that the Bureau of Construction and Repairs had recommended a credit of 184 days against the delay in delivery of the complete equipment because of failure on the part of the government to act upon the plans submitted within the time limited by the contract, but that the Bureau of Supplies and Accounts held that the plaintiff was entitled to a credit of only 37 days. This divergence, however, is unimportant, because by either finding the plaintiff was held solely responsible for more than 100 days of delay, enough to charge it with the maximum amount of liquidated damages allowable. On December 4 the plaintiff, after some intermediate steps, requested action by the Secretary of the Navy upon its claim for remission of liquidated damages, presenting the argument that delays on the part of the government before the completion date of the contract prevented final delivery on that date, and that, therefore, the government had entirely waived the delivery date and consequently the provision for liquidated damages. The Secretary of the Navy, on July 2, 1935, found, "as a matter of fact, that the American Engineering Company was responsible for delays in the delivery of the material for a period in excess of 100 days, the minimum delay requiring the assessment of the maximum amount of liquidated damages."

The plaintiff now seeks to escape the binding effect of its appeal and the decision upon it by the head of the department concerned by contending that, inasmuch as the work was delayed solely because of the government's fault beyond the completion dates, the provision for liquidated damages was waived, and that the question of law thus involved was outside the scope of the authority of the department head to determine.

If it were the fact that the government, by its default or failure to act, did make it impossible for the plaintiff to meet its obligation to deliver in accordance with the contract, then the plaintiff's position would be correct, and the case would be ruled by United States v. United Engineering & Construction Company, 234 U.S. 236, 34 S.Ct. 843, 845, 58 L.Ed. 1294, in which it was said: "We think the better rule is that when the contractor has agreed to do a piece of work within a given time, and the parties have stipulated a fixed sum as liquidated damages, not wholly disproportionate to the loss for each day's delay, in order to enforce such payment the other party must not prevent the performance of the contract within the stipulated time; and that where such is the case, and thereafter the work is completed, though delayed by the fault of the contractor, the rule of the original contract cannot be insisted upon, and liquidated damages measured thereby are waived." It is important to note that the fact finding by the Court of Claims, upon which the decision of the Supreme Court was based was that, "No delays were chargeable to the claimant up to October 15, 1901, the time fixed for the completion of the work," although there were plenty of delays caused by it later on.

On the other hand, as pointed out in Robinson v. United States, 261 U.S. 486, 43 S. Ct. 420, 67 L.Ed. 760, this rule only applies to cases in which, but for the government's defaults, the work would have been completed within the contract period, and the mere fact that the total amount of delay occasioned by the government, might have been enough to have prevented performance had it all occurred before the completion date, does not affect the liquidated damage provision.

In the first case (United States v. United Engineering Company, supra) what was really involved was a question of construing the contract—whether the liquidated damage provision applied to the situation there presented. In the second case (Robinson v. United States, supra) there was nothing involved but a question of fact —who was responsible for how much delay —clearly within the submission provision. Moreover, in the Robinson Case, the contract provided for an extension of the completion date of one day for each day of delay caused by the government, thus excluding the idea that such delay might be a waiver of the completion date, since default by the government would, under the contract, simply result in an automatic extension pro tanto. In this respect the contract in the case now before the Court is substantially the same.

 The result is that what I have to determine first is whether the failure of the plaintiff to perform within the agreed time was solely due to the delay or default of the government; because, if it was not, then the decision of the Secretary of the Navy is conclusive as to the number of days chargeable to the plaintiff, is binding upon it, and prevents any recovery in this action. The mere fact that the plaintiff raised the question of waiver before the Secretary of the Navy would not affect his right to decide the dispute if there was nothing to bring it into the case.

 In passing upon the question thus presented it may be said at the outset that the plaintiff is correct in pointing out that the work which it undertook to perform was new and was not of a design standard in the navy at the time the contract was made. The plaintiff wishes me to find, in addition, that the design of the equipment "had to be developed by the plaintiff in collaboration with the defendant." That is true only in the sense that the plaintiff no doubt realized that it would need more than the ordinary amount of collaboration from the government and took the contract with the hope that the government would not insist upon strict performance on time.

The situation seems to be pretty well summed up in the plaintiff's letter of appeal to the Secretary of the Navy. It said: "The answer of the Department to the American Engineering Company's request that no liquidated damages be assessed pointed out that in its bid it took no exception to the delivery date. That is true, but in the first place the date for filing bids was made so late that it was impossible to meet the delivery date, and the American Engineering Company (and it is believed all other bidders) considered it as taken for granted that the dates would not apply, and in the second place it was assumed that the Department would be reasonable and if no actual damage was sustained would not seek to enforce the liquidated damage clause as a penalty."

There was, however, no such understanding on the part of the government and nothing which it said or did could have misled the plaintiff in that regard. One of the government's engineers testified, "we were somewhat astounded * * * to find the short delivery time in this contract * * * and we agreed that since it was a reputable firm and had undertaken to build this equipment in so short a time, they must have prepared all the detailed plans at the time they made this bid or prior to making their bid. * * *"

The plaintiff's case is largely built upon a provision in the contract that working drawings which were to show arrangements and details were to be submitted "for approval." A Blueprint without complete details was furnished to the plaintiff with the specifications before it put in its bid. It is referred to as a "guidance plan," but it, the specifications, and the "blueprints and working drawings showing arrangements and all details" which the contract required the plaintiff to submit within two weeks after the award, all made a binding contract. The plaintiff was not bound to wait for the approval of its working drawings by the government, but could, within its strict legal rights, proceed without such approval at its own risk—the risk of not conforming to the guidance plan and specifications. Obviously, however, in a job of this kind, such procedure would have been extremely unsatisfactory, would have led to innumerable disputes, invited litigation, and might have resulted in rejection of the work. The right which the plaintiff thus had to get its plans—its interpretation of the specifications and guidance plan—approved before going ahead was thus partly, perhaps mainly, for its benefit, though it was also for the government's benefit, to make sure that it would get exactly what it wanted without ex post facto rejection and consequent delay, and to allow it to make such changes in detail and design as seemed desirable.

The contract provided that the government might have a month, after the submission of plans, to signify its approval. If the government held the plans without approval longer than a month, it would be chargeable with the excess delay and the completion date extended thereby. The unmistakable intent is that the government was not to be charged with the first month, but that that necessarily came out of the contractor's time and did not postpone the time for completion.

The contract appears to have been drawn upon the assumption that working drawings for the entire equipment would be submitted in one batch, or at least the whole thing within two weeks after the award. The government would then approve within a month, and the plaintiff proceed at once to manufacture, having in the meantime made such preparation and done such

work as it could safely do without formal approval. If this had been done (it was not done) the plaintiff would have been able to start its manufacturing not earlier than the first week of August. Obviously, even under this procedure, which was certainly the most expeditious which could have been adopted, there would be an extremely short time left for performance. It might have been enough, although that is very doubtful.

However, that was not the procedure adopted. The general plans submitted by the plaintiff with its bid were dummies, merely sufficient to show good faith and general arrangement, designedly insufficient to be of any use as working drawings, the idea being to prevent competitors from benefitting from their designs.

What was actually done was described by one of the witnesses as follows: " * * * there were two ways of submission of plans in equipment of this type; they could submit their entire plans for the entire equipment at once, or within a certain period, or they could submit the plans in waves, disjoined plans in waves as the American Engineering Company did. They submitted their plans in five or seven waves, and submitting plans in waves of that nature both delays them in their manufacture because even though we approve the first wave, if the later wave comes in, the later plans come in, and what we have approved on the first wave is incompatible with what they present later, we have the right to demand a homogeneous unit, a good unit all the way through."

Now it is perfectly plain that, when the plaintiff elected to submit its plans in waves, it was practically putting it out of its power to comply with the provision for date of delivery. Also, as the same witness said, the contractor "is also very seriously interfering with our work. Where we have all the plans at once, we can criticize them and look at them at once. If they come in waves, we very often have to recreate them to meet what has been accepted and approved in the past, in the light of late manufacture."

I do not find that the government protested against the method of sending in plans which the plaintiff adopted, but, on the other hand, it certainly did not invite it, and it made no statement at any time to indicate that it would extend the completion date or waive the liquidated damage provision. It merely accepted the plans as they came in and approved them in due course. In many cases it delayed more than a month in giving its approval, but such delay, it was understood, was to be credited to the plaintiff. It also made changes and had demands which often required redesigning and resubmission. Referring to these changes made by the government and the delay involved, the plaintiff's principal witness said, "That is a point; some of these changes were reasonable, and I think most of the changes were reasonable; I don't know, what they told me may not have been important; I wouldn't say they were not reasonable changes. * . * * I wouldn't say any one department held the plans longer than necessary. It was a question of getting the plans through. We had to send the plans to three offices of the Navy Department before they were returned. I wouldn't say any one office held the plans an unusual time before acting on the plans."

The plaintiff's answer to all this is that in view of the novel design of the equipment to be furnished and the absence of sufficient data in its hands at the time it was awarded the contract it was impossible for it to proceed otherwise. This may be true, but, if so, it is remarkable that on June 6, nearly a month before the award, in transmitting its bid it took occasion to say, "If we are the successful bidder, we are prepared to make delivery in accordance with schedule requirements, provided we receive a contract for this equipment not later than July first, 1932"—certainly an intimation that its ability or preparedness to deliver on time was something for the government to consider specially in awarding the contract.

If the plaintiff, with full knowledge of the difficulties before it, took a contract which it was almost impossible to perform under any method of procedure and then adopted a method which made it quite impossible, it would be fruitless to attempt to apportion the responsibility for the total delay, day by day, between the parties. Unquestionably, the government was to blame for some of it. An example is its misinterpretation of its own specifications in connection with the location of the rotating mechanism within the confines of the platform. This caused a delay of approximately 19 days. But the plaintiff's original working drawings for this part of the equipment were not sent in until July 28, so that, even if they had been approved

without any revision (assuming that the government took the full month which the contract allowed it) the plaintiff would not have been able to start manufacturing until two days before the time for delivery to the east coast ships—unless, of course, it chose to go ahead at its own risk upon the information received at the conference on August 3. Thus, regardless of any delay upon the government's part, the plaintiff, at the outset, had put it beyond its power to comply with the delivery date.

This is typical of what prevailed throughout the performance of this contract. The best case that can be made out for the plaintiff is to say that if it had been ready with all its plans at the time the contract was awarded and had submitted them promptly for approval, there is a bare possibility that, but for delays on the government's part, delivery would have been made on time. On the other hand, by proceeding as it did, the plaintiff never had the slightest chance to perform, even had the government acted with the utmost promptness within its rights on all occasions.

Speculation upon the moral or equitable aspects of this controversy, which involves purely legal rights, leads nowhere. It may be that the government, having shown no actual money loss, is ungenerous in standing upon the strict letter of its contract. On the other hand, the plaintiff, realizing the improbability of its being able to perform on time and having the liquidated damage clause in view, may have added enough to its bid to bring it out whole. In any event, neither at law nor in equity can the Court grant relief from the consequences of a contract improvidently entered into.

I find as a fact that the plaintiff's failure to make delivery as called for by the contract was primarily due to its adoption of a method of performance which made compliance impossible, and, in a broader sense, to its having knowingly entered into a contract which, from its inadequate acquaintance with the subject matter, could hardly have been performed otherwise.

As a matter of law, I conclude that this case is not within the rule of United States v. United Engineering etc., Company, supra; that it is ruled by Robinson v. United States, supra; and that the decision of the Secretary of the Navy is binding upon the plaintiff.

The petition may be dismissed.