## UNITED STATES v. KANTER et al.
### No. 12541.

Circuit Court of Appeals, Eighth Circuit.
Sept. 4, 1943.

Earl A. Grimes, Asst. U. S. Atty., of Kansas City, Mo. (Maurice M. Milligan, U. S. Atty., of Kansas City, Mo., on the brief), for appellant.

Myer M. Rich, of Kansas City, Mo., for appellees.

Before SANBORN, WOODROUGH, and RIDDICK, Circuit Judges.

RIDDICK, Circuit Judge.

This suit was brought by the United States to recover liquidated damages for delay in the performance of a contract between the Veterans Administration and appellee Kanter, by which Kanter agreed to manufacture and deliver to the Veterans Administration 1,500 duck feather pillows. The Veterans Administration's invitation for bids, with accompanying specifications, and Kanter's bid and its acceptance constitute the contract between the parties. The American Surety Company of New York became Kanter's surety on his performance

bond. The United States appeals from a judgment in its favor in the sum of one dollar and costs.

The contract sued on provided: (1) That the pillows must comply in all respects with the detailed specifications accompanying the invitation for bids; (2) that the bidder should state the time within which delivery would be made, in no event to exceed 90 days from receipt by the bidder of an order for the pillows, provided that on failure of the bidder to specify the time for performance, the date of delivery under the contract should be within ten days from receipt of the Government's order by the bidder; (3) that the Government should have the right to inspect the pillows before delivery and the right in the event public necessity should require, to accept pillows not completely complying with specifications the price for such pillows to be subject to adjustment; (4) that if the contractor failed to make delivery of the pillows within the time specified in the contract or any extension thereof, the actual damage to the Government for delay would be impossible to determine, and, in lieu thereof, the contractor should pay to the Government as liquidated damages for each calendar day of delay in making delivery the sum of ten dollars; (5) that the Government reserved the right to terminate the contract for delay by the bidder and to purchase the pillows in the open market charging the bidder with any excess cost occasioned the Government thereby, together with the specified liquidated damages accruing until such time as the Government might reasonably procure the pillows elsewhere; and (6) that Kanter agreed to deliver the pillows for the price of $1.35 each, or for a total sum of $2,025.

The facts material to the decision here are not in dispute. Kanter did not specify in his bid the time for delivery. He received the Government's order for the pillows on July 1, 1935. The evidence fails to show when the pillows were tendered to the Government for inspection, but it appears that on July 25, 1935, the pillows were inspected at appellee Kanter's factory in Kansas City, Missouri, and were found to be in all repects in accordance with the specifications of the Veterans Administration, except that in their manufacture the appellee Kanter had not used the required number of stitches in sewing the pillows and had used thread other than the type specified. The Government's inspector at

that time advised Kanter of the failure of the pillows to comply with specifications in the respects stated, but suggested that he request the acceptance of the pillows on the ground that the departures from specifications were of minor importance.

On July 29, 1935, appellee Kanter shipped the pillows to the Veterans Administration at Perry Point, Maryland, calling attention to the failure to comply with specifications concerning the kind of thread and the number of stitches used in sewing the pillows, and requesting acceptance of the pillows. On October 25, 1935, the Government advised Kanter that the pillows had been again inspected and had been found defective because of failure to comply with specifications in many particulars. No explanation was offered by the Government for the delay which occurred between the date of the arrival of the pillows in Maryland and their rejection on October 25, 1935.

Nothing further occurred between October 25, 1935, and November 21, 1935, except that Kanter made a trip to Washington and offered to have the pillows resewn with the proper number of stitches and using the proper thread, and attempted to secure their acceptance on these conditions. His offer was declined. On November 21, 1935, the Government notified Kanter that the rejection of the pillows was final, and that unless he substituted others complying with specifications by the 21st day of December, 1935, a default would be declared in the contract. Kanter made no response to this offer, and on January 14, 1936, the officers of the Veterans Administration declared the contract in default. On the following day other pillows were purchased from another manufacturer for delivery on February 22, 1936. The purchase price for the pillows in this transaction was $1.30 per pillow, or a total of $1,950.

In its complaint the appellant alleged that by the terms of the contract sued on Kanter was obligated to deliver the pillows on or before September 29, 1935, and that on his failure to do so he became liable to appellant for ten dollars for each day from that date until February 22, 1936, the date of delivery under the Government's second purchase. The number of days involved was 146 days, and the Government alleged liability upon the part of Kanter and the surety in the sum of $1,460.

After finding the facts substantially as above stated, the district judge held that

the time of the delivery of the pillows provided for by the contract between the parties was within ten days from Kanter's receipt of the order for the pillows, or within ten days from July 1, 1935, but he concluded that the Government had waived the original time for delivery, and that, no other definite date for the delivery having been agreed upon by the parties, there could be no recovery under the liquidated damages clause of the contract; and further that the Government, making no claim or proof of actual damages, was entitled to recover only nominal damages. The Government assigns error in the holding of the court that it waived the delivery of the pillows within the time originally specified in the contract.

Where, as the parties here have agreed is the fact, proof of actual damage for delay in performance of a contract is impracticable or difficult, courts look with favor upon reasonable agreements for liquidated damages made by the parties with full understanding of the situation confronting them; and such contract provisions are uniformly enforced as the parties have written them. Sun Printing & Publishing Association v. Moore, 183 U.S. 642, 669, 22 S.Ct. 240, 46 L.Ed. 366; United States v. Bethlehem Steel Co., 205 U.S. 105, 118, 119, 27 S.Ct. 450, 51 L.Ed. 731; Wise v. United States, 249 U.S. 361, 365, 39 S.Ct. 303, 63 L.Ed. 647; Robinson v. United States, 261 U.S. 486, 43 S.Ct. 420, 67 L.Ed. 760; Bankers' Surety Co. v. Elkhorn River Drainage District, 8 Cir., 214 F. 342, certiorari denied 235 U.S. 702, 35 S.Ct. 206, 59 L.Ed. 433; Larabee Flour Mills Co. v. Carignano, 10 Cir., 49 F.2d 151, 154, 155; Consolidated Flour Mills Co. v. File Brothers Co., 10 Cir., 110 F.2d 926, 929, 930; compare Northwestern Terra Cotta Co. v. Caldwell, 8 Cir., 234 F. 491. Where, however, the amount stipulated in the contract as liquidated damage for the failure of performance bears no relation to the actual damage which may reasonably be anticipated from such a failure, courts decline to enforce the terms of the stipulation. Kothe v. R. C. Taylor Trust, 280 U.S. 224, 50 S. Ct. 142, 74 L.Ed. 382. Contracts falling in this latter category are regarded by the courts as contracts for unenforceable penalties. Where the contract for liquidated damages is reasonable in character, it is valid and enforceable although the party complaining of a failure of performance neglects or is unable to prove actual

damages by reason of a breach of contract. Southern Pacific Co. v. Globe Indemnity Co., 2 Cir., 21 F.2d 288, 291; and cases cited above. But it is also established that where one seeking to enforce a provision for liquidated damages is responsible for the failure of performance, or has contributed in part to it, the provision will not be enforced. Where both parties are in default, courts will not attempt to apportion the delay due to each party in the absence of a contract provision requiring such apportionment. United States v. United Engineering & Const. Co., 234 U.S. 236, 242, 243, 34 S.Ct. 843, 58 L.Ed. 1294; American Engineering Co. v. United States, D.C., 24 F.Supp. 449, 451; 3 Williston on Contracts, § 789; 25 C.J.S., Damages, § 115, subsec. c. While it is doubtless true, as appellant contends, that no agent of the Government may waive a valid provision of a contract to which the United States is a party, it is equally true that one party to a contract may not recover for a breach where its acts have contributed to prevent or delay performance by the other party. To this extent the Government may be held to have waived the right to enforce the provision in question, since it was responsible, in part at least, for the delay of which it complains. "We think the better rule is that when the contractor has agreed to do a piece of work within a given time, and the parties have stipulated a fixed sum as liquidated damages, not wholly disproportionate to the loss for each day's delay, in order to enforce such payment the other party must not prevent the performance of the contract within the stipulated time; and that where such is the case, and thereafter the work is completed, though delayed by the fault of the contractor, the rule of the original contract cannot be insisted upon, and liquidated damages measured thereby are waived." United States v. United Engineering & Const. Co., supra, 234 U.S. at page 242, 34 S.Ct. at page 845, 58 L.Ed. 1294.

We think that the Government was responsible for a large part of the delay for which it now seeks to recover liquidated damages at the rate stipulated in the contract, and that the trial court was correct in holding that the Government had waived delivery as of the time provided for in the contract and in holding that the parties never agreed upon another time for delivery of the pillows. The Government's order for the pillows was received by Kanter on July

1, 1935, and, because he had failed to specify in his bid the time for delivery of the pillows, that date became fixed by the terms of the invitation for bids as of July 10, 1935. But the contract also provided that the Government had the right to inspect the pillows for conformity to specifications before acceptance. The first of these inspections was made on July 25, 1935. Whether or not the pillows were ready for inspection on the 10th day of July does not appear. The second inspection which the Government made of the pillows was completed on October 25, 1935, and final rejection was made the following November 21, 1935, approximately 141 days after the delivery date specified in the contract. No explanation is advanced for this long delay on the part of the Government in the acceptance or rejection of the pillows. During this time the appellee Kanter, being without authoritative advice as to whether the pillows would be eventually accepted or rejected, was in no position to expedite delivery. Moreover, after final rejection on November 21, 1935, the Government notified the appellee that the pillows would be accepted if delivered according to specifications by December 21, 1935. The offer was not accepted, but the Government did nothing to secure pillows from another source until January 15, 1936. It may be argued with reason, as indeed the appellees do argue, that the provision for delay damages relied on by the Government is in reality a provision for a penalty, and, as such, not enforceable. But we need not decide this question for, assuming that the provision for liquidated damage was a reasonable one, the contract sued on affords no basis for holding the contractor liable for delay caused in great part by the acts of Government agents. It is true that the Government insists that the time for delivery of the pillows fixed by the contract was September 29, 1935, but this interpretation of the contract is wholly arbitrary and without basis in evidence to support it, nor can it be effective to change the obligations of the parties which the contract has fixed.

The case of Robinson v. United States, supra, does not require a contrary holding. The decision in favor of the Government there turned upon the fact that the contract involved in that case contained a provision extending the time of performance one day for each day's delay caused by the act of the Government, a provision which required the apportionment of delay between the parties.

The judgment of the district court is affirmed.