AETNA CASUALTY AND SURETY CO., a Corporation,

v.

BUTTE–MEADE SANITARY WATER DISTRICT, a South Dakota Corporation.

No. CIV 77–5034.

United States District Court, D. South Dakota.

Nov. 5, 1980.

appropriateness of admiralty jurisdiction.

Francis M. Smith, Sioux Falls, S. D., for plaintiff.

Gregory Eiesland, Rapid City, S. D., Terence R. Quinn, Belle Fourche, S. D., for defendant.

## MEMORANDUM OPINION

BOGUE, Chief Judge.

This is an action brought by Aetna Casualty and Surety Company, Inc. (Plaintiff), the bonding agent for J. F. Brunken and Sons, Inc. (Brunken), against Butte–Meade Sanitary Water District (Defendant) to recover payments retained by Defendant under two construction contracts entered into between Defendant and Brunken on August 14, 1968. Defendant has counterclaimed asking for judgment against Plaintiff in the amount of $56,900 as liquidated damages under one of the contracts and $65,050 as liquidated damages under the other contract. Defendant has also counterclaimed for punitive damages in the amount of $3.9 million plus attorney's fees as a result of Plaintiff's allegedly bad faith investigation regarding Defendant's liquidated damages claim.

In regard to Plaintiff's claim, Defendant has agreed that it owes Plaintiff the money requested and has so stipulated. The records indicate that the retainages amounted to $67,330.46 (Ex. 2354) and thus, this Court will enter judgment in Plaintiff's favor for this amount. As a result of this stipulation, the only issues remaining to be decided concern Defendant's counterclaim.

The bulk of the Court's findings will be reflected in the Findings of Fact and Conclusions of Law. But first, a couple of legal issues must be discussed in this memorandum opinion.

Defendant contracted with Brunken to complete two contracts. One was called the water mains contract and the other was called the pump house and reservoir foundations contract. Plaintiff was procured by Brunken as the surety on its bond. Under the contracts, Brunken was allowed 550 days plus extensions to complete the water mains contract and 360 days plus extensions to complete the pump house contract. Liquidated damages were set at $50 per day on each contract. Defendant claims the completion of the water mains contract was delayed 1,138 days for a total of $56,900, and the completion of the pump house contract was delayed 1,301 days for a total of $65,050.

Defendant claims that various acts by both Brunken and Plaintiff combined to cause the delay in completing the project. Plaintiff, on the other hand, alleges that a substantial amount of delay was caused by the actions of Defendant. As such, Plaintiff argues that Defendant is barred from recovering liquidated damages. Plaintiff cites the following rule:

By the weight of authority, where the contractee has caused a substantial delay in the beginning or progress of the work, without any agreement for an extension of time to offset the delay, the time limit fixed in the contract, and any provision for liquidated damages based thereon, are entirely abrogated, leaving the contractor responsible only for the completion of the work within a reasonable time. *Anno.* 152 A.L.R. 1349, 1359.

Not all courts have agreed with this rule. In *Nomellini Construction Co. v. Department of Water Resources*, 19 Cal.App.3d 240, 96 Cal.Rptr. 682, 686 (1971), the court held:

> [C]ategorical statements that where delays are caused on both sides there is no way to "apportion damages" are an absurdity. Damages are not being apportioned. Damages are liquidated. Quantum of delay in terms of time is all that is being apportioned. That is an uncomplicated fact finding process. That is what courts are for.

This Court must determine whether it should attempt to apportion the causes for delay among the Defendant, the Contractor, and the Plaintiff, and assess damages on the basis of this apportionment or simply deny Defendant liquidated damages if it is found that Defendant substantially contributed to the delay in completing the project. There is a split of authority regarding this issue. South Dakota apparently has not addressed the issue. It has, however, been addressed by the United States Supreme Court on a couple of occasions. The first Supreme Court case to consider the issue was *United States v. United Engineering & Construction Co.*, 234 U.S. 236, 34 S.Ct. 843, 58 L.Ed. 1294 (1914). In that case, the Plaintiff claimed liquidated damages for the delay in the completion of a contract. The evidence indicated that a good portion of the delay was caused by Plaintiff's actions. The court adopted the following reasoning:

> We think the better rule is that when the contractor has agreed to do a piece of work within a given time, and the parties have stipulated a fixed sum as liquidated damages, not wholly disproportionate to the loss for each day's delay, in order to enforce such payment the other party must not prevent the performance of the contract within the stipulated time; and that where such is the case, and thereafter the work is completed, though delayed by the fault of the contractor, the rule of the original contract cannot be insisted upon, and liquidated damages measured thereby are waived. *Id.* at 242.

A somewhat similar situation arose in the case of *Robinson v. United States*, 261 U.S. 486, 43 S.Ct. 420, 67 L.Ed. 760 (1923). In that case, the contract was completed 121 days after the scheduled completion date. The Defendant asserted that it was entitled to liquidated damages. Plaintiff contended that since Defendant had caused some of the delay, the provision for liquidated damages became inapplicable and was unenforceable. The trial court found the Defendant chargeable for 61 days' delay and assessed liquidated damages on that basis.

The Supreme Court upheld the trial court stating:

> The fact that the government's action caused some of the delay presents no legal ground for denying it compensation for loss suffered wholly through the fault of the contractor. Since the contractor agreed to pay at a specified rate for each day's delay not caused by the government, it was clearly the intention that it should pay for some days' delay at that rate, even if it were relieved from paying for other days, because of the government's action. If it had appeared that the first 61 days' delay had been due wholly to the contractor's fault, and the government had caused the last 60 days' delay, there could hardly be a contention that the provision for liquidated damages should not apply. Here the fault of the respective parties was not so clearly distributed in time, and it may have been difficult to determine, as a matter of fact, how much of the delay was attributable to each. But the Court of Claims has done so in this case. Its findings are

specific and conclusive. *Id.* at 488–89, 43 S.Ct. at 400.

The *United Engineering* case, *supra*, was distinguished on the following basis:

> The case is wholly unlike *United States v. United Engineering Co.,* . . . upon which claimant relies. The question there was one of construction. The lower court found, as a fact that, but for the government's action, the work would have been completed within the contract period, and this court construed the provision for liquidated damages as not applicable to such a case. Here the question is not properly one of construction. *Id.* at 489, 43 S.Ct. at 400.

The *Robinson* case appears to stand for the proposition that where the causes for delay can be apportioned, the court is free to assess liquidated damages on this basis, unless the court finds that the contract would have been completed on time but for the delays caused by the party claiming liquidated damages. Plaintiff, however, cites a number of cases where courts have disapproved of an attempt to apportion causes for delay. *See, e. g. United States v. Kanter,* 137 F.2d 828 (8th Cir. 1943); *Acme Process Equipment Co. v. United States,* 347 F.2d 509 (Ct.Cl.1965); *Glassman Construction Co., Inc. v. Maryland City Plaza, Inc.,* 371 F.Supp. 1154 (D.Md.1974); *Fruin–Colnon International, S.A. v. Concreto, S.A.,* 231 F.Supp. 14 (D.Canal Zone 1964); *Haggerty v. Selsco,* 166 Mont. 492, 534 P.2d 874 (Mont.1975); *General Insurance Co. of America v. Commerce Hyatt House,* 5 Cal. App.3d 460, 85 Cal.Rptr. 317 (1970); *Lee Turzillo Contracting Co. v. Frank Messer & Sons, Inc.,* 23 Ohio App.2d 179, 261 N.E.2d 675 (1969); *State v. Jack B. Parson Construction,* 93 Idaho 118, 456 P.2d 762 (1969); *L. A. Reynolds Co. v. State Highway Commission,* 271 N.C. 40, 155 S.E.2d 473 (1967).

In *Kanter, supra,* at 830, the Eighth Circuit Court of Appeals stated:

> [W]here one seeking to enforce a provision for liquidated damages is responsible for the failure of performance, or has contributed in part to it, the provision will not be enforced. Where both parties are in default, courts will not attempt to apportion the delay due to each party in the absence of a contract provision requiring such apportionment.

Without specifically mentioning *Kanter,* the Eighth Circuit backed away from this position in the case of *Southwest Engineering Co. v. United States,* 341 F.2d 998 (8th Cir. 1965). In that case, the Plaintiff claimed the Defendant was not entitled to liquidated damages because it had caused or contributed to the delay in completing the contract. Citing *Robinson, supra,* the Eighth Circuit rejected this contention and upheld the liquidated damages award.

Other fairly recent federal decisions have supported the apportioning of fault in assessing liquidated damages. In *E. C. Ernst, Inc. v. Manhattan Construction Co. of Texas,* 551 F.2d 1026, 1038–39 (5th Cir. 1977), *cert. denied Providence Hospital v. Manhattan Construction Co. of Texas,* 434 U.S. 1067, 98 S.Ct. 1246, 55 L.Ed.2d 769 (1978), the court stated:

> Ernst seeks to avoid an assessment of liquidated damages by the so–called rule against apportionment. This rule states that under a liquidated damage provision against delay, where the owner has contributed to delays on the project he may not apportion the fault but forfeits all right to recover under the provision. The rule has been adopted by some jurisdictions but rejected by others.
>
> \*  \*  \*  \*  \*  \*
>
> [The rule against apportionment] is an old one whose underlying policies do not remain in full force. One of the dominant reasons underlying it is early judicial hostility to the use of privately agreed upon contract damage remedies. . . . Today, given the increasing complexity of contractual relationships, liquidated damage provisions have obtained firm judicial and legislative support. . . . As long as the owner's own delay is not incurred in bad faith, it is not unjust to allow proportional fault to govern recovery. Generally, owners do not benefit from delays that they incur. Another reason cited in support of the rule

is that proving apportionment is simply too difficult. We do not disagree with the difficulty of the task, but recovery should not be barred in every case by a rule of law that precludes examination of the evidence. The district court did not err in allowing apportioned liquidated damages to Providence.

*See also United States ex rel. Thorleif Larson & Sons, Inc. v. B. R. Abbot Construction Co.*, 466 F.2d 712 (7th Cir. 1972); *American Engineering Co. v. United States*, 24 F.Supp. 449 (E.D.Pa.1938).

■ The evidence in this case clearly establishes that Plaintiff, Defendant and the contractor were all at least in part responsible for delaying the completion of this project. Apportioning the delay among these parties has proved to be quite difficult. However, this Court feels that recent case law is clearly in favor of such apportionment of fault and that simply because Defendant contributed to the delay in the completion of the project, it should not be barred from recovering liquidated damages.

■ Another point should be briefly addressed in regard to the apportionment of fault. The scheduled completion date of the pumphouse project was May, 1970. The scheduled completion date of the water mains project was June, 1970. Both projects were eventually accepted in December, 1973. Defendant has asserted that certain acts of Plaintiff occurring subsequent to the completion dates helped to contribute to the delay in completion and should be considered in assessing liquidated damages. Plaintiff appears to argue that anything occurring subsequent to the scheduled completion dates is irrelevant to the determination of the liquidated damages issue because the right to liquidated damages should have been established as of the completion dates. If it was established that but for the delays caused by the Defendant the contracts would have been completed by the scheduled completion dates, Plaintiff's argument would have some merit. However, this Court does not feel that this is the case. The failure to complete the contracts by the spring of 1970 was not solely the fault of

Defendant. Therefore, any actions by Plaintiff subsequent to the scheduled completion dates which delayed the project even more can be considered in assessing liquidated damages.

■ Another issue that should be addressed in regard to liquidated damages concerns Plaintiff's bond limit on the pumphouse contract. As noted previously, Defendant claims $65,050 as liquidated damages under the pumphouse contract. However, the penal sum in the payment and performance bond issued by Plaintiff for the pumphouse contract is only $39,642.20 (Ex. 1897). The rule seems clear that Defendant cannot recover liquidated damages from Plaintiff which exceed the penal sum contained in the bond.

> If appellant's contention that the surety's liability may exceed the sum stated on the face of the bond is correct, and it is not, it would be futile to state any amount of liability in the bond .... [T]he sole object of stating the penalty in a bond is to fix the limit of the liability of the signers, and no recovery can be had on such bond against the principal or surety beyond the penalty named in the bond. *Bill Curphy v. Elliott*, 207 F.2d 103, 106 (5th Cir. 1953).

*See also Trainor Co. v. Aetna Casualty & Surety Co.*, 290 U.S. 47, 54 S.Ct. 1, 78 L.Ed. 162 (1953); *Massachusetts Bonding and Insurance Co. v. United States*, 97 F.2d 879 (9th Cir. 1938); *Pennsylvania Fire Insurance Co. v. American Airlines, Inc.*, 180 F.Supp. 239 (E.D.N.Y.1960); 17 Am.Jur.2d, *Contractors' Bonds*, § 131; 11 C.J.S. *Bonds* § 132.

Although Plaintiff waived its bond limits when it set out to complete the project (Ex. 1379), this waiver did not extend to liability for liquidated damages. At one point Defendant appeared to agree that it could only recover up to the limits of the bond (Ex. 310). Therefore, this Court rules that any recovery of liquidated damages under the pumphouse contract cannot exceed the sum of $39,642.20.

■■ One final point should be noted in regard to liquidated damages before stating

the Findings. Plaintiff has also raised the issue of substantial completion arguing that the contracts were substantially completed on the scheduled completion dates. This Court adopts the following definition of substantial completion.

> [T]here is substantial performance of such a contract where all the essentials necessary to the full accomplishment of the purposes for which the thing contracted for has been constructed are performed with such an approximation to complete performance that the owner obtains substantially what is called for by the contract. 13 Am.Jur.2d, *Building and Construction Contracts*, § 43, p. 46.

Furthermore, it should also be noted that the burden of proof in regard to this issue is upon Plaintiff in this case. *See* 13 Am. Jur.2d, *Building and Construction Contracts*, § 121; 17A C.J.S. *Contracts* § 574.

As noted previously, both parties claim numerous causes for the delay in the completion of the project. In its Findings this Court has attempted to individually address what it considers to be the major areas regarding delay. Hopefully this format will make it clear how the fault for delay was apportioned.

The remainder of the issues regarding both liquidated damages and the bad faith claim will be dealt with in the Court's Findings and Conclusions.